STANDARD LIFE AND ACCIDENT INSURANCE CO. V. JOHN ASKEW.

No. 836.

**1. Insurance Policy—Time Limited for Bringing Action—Service.**

Plaintiff's petition on an accident insurance policy was filed and non-resident notice served on the defendant company within the time prescribed by the policy for bringing suit thereon, but due service of citation on an agent of the company was not had until after the lapse of such time. Held, that the suit was brought and prosecuted within time.

**2. Same—Evidence—Declarations.**

It being a material issue as to whether the insured, who was shot and killed at the house of one G., was killed accidentally or intentionally, the declarations of G. made on the night insured was shot, to the effect that he was going home and intended to kill insured, if he found him there, were admissible; as also evidence of the sheriff that he had since the killing made search for G. and could not find him.

**3. Same—Indictment Not Evidence.**

An indictment charging G with the murder of the insured was not evidence of the fact it alleged, nor an independent circumstance tending to prove the killing.

**4. New Trial—Newly Discovered Evidence.**

Where material evidence has been discovered after the trial, and the failure to discover it sooner is not due to negligence, a new trial should be granted.

APPEAL from Bowie. Tried below before Hon. JOHN L. SHEPPARD.

*H. C. Hynson,* for appellant.—1. A stipulation in a contract requiring suit to be brought within sixteen months after the accident, is legal;

and the filing of a petition in a suit upon such a contract, within the time, but failing and refusing for more than sixteen months to issue citation thereon, will not arrest the operation of that stipulation, and the cause of action is thereby lost. Suggs v. Ins. Co., 70 Texas; Ins. Co. v. Lacroix, 45 Texas, 158; York v. State, 73 Texas, 651; Kimmarle v. Railway, 76 Texas, 686.

2. When an act is done, to which it is necessary or important to ascribe a character, motive, or object, what was said by the actor at the time, from which the character, motive, or cause may be collected, is part of the res gestae, verbal acts, and may be given in evidence whether the actor be or be not a party to the suit. 1 Greenleaf, par. 108 and notes, 14th ed.; 1 Greenleaf, notes bottom page 79, 14th ed.; Gilchrist v. Bale, 8 Watts (Pa.), 355; Pool v. Bridger, 4 Pick., 379; Allen v. Duncan, 11 Pick., 309; Gray v. Goodrich, 7 Johns., 95; Hayner v. Rutter, 24 Pick., 242; Tomkies v. Reynolds, 17 Ala., 109; Stephen v. McCloy, 36 Iowa, 659; Duling v. Johnson, 32 Ind., 155; Railway v. Fay, 16 Ill., 558; Travelers Co. v. McConkey, 127 U. S., 661; Phelan v. Travelers Co., 38 Mo. App., 640; Fischer v. Travelers Co., 77 Cal., 246.

3. Evidence of all those matters which shed a real, though perhaps indirect and feeble light on the question in issue, are relevant and admissible. Taylor's Ev., par. 316; 1 Rice on Ev., 520; 1 Greenleaf, note, p. 78, 14th ed.; Camp v. Camp, 59 Vermont, 667.

4. Evidence is always admissible which shows the subsequent conduct of the person to be such as would have been likely if the act had been committed by him, where such act is in issue. 1 Greenleaf Ev., note, p. 79, 14th ed.; Furnas v. Dugin, 119 Mass., 500; Butler v. Collins, 12 Cal., 457.

No brief for appellee reached the Reporter.

FINLEY, Associate Justice.—This cause is presented to us upon brief of appellant alone, and its statement will be treated by this court as a true statement of the record. Rules for Courts of Civil Appeals, 40.

April 20, 1891, John Askew, as next friend of Eddy and Lena Williams, minors, filed this suit against the defendant insurance company, in the District Court of Bowie County, alleging that the insurance company had issued a certain policy of accident insurance, whereby it did insure Dock Williams against the effect of injury to his body, caused by external, violent, and accidental means, and in case of death of the insured from such means, it would, within sixty days after receipt of satisfactory proofs of death and claim, pay the sum of fifteen hundred dollars to said Eddy and Lena Williams. Plaintiffs further alleged that on August 29, 1890, said Dock Williams was accidentally killed, by being accidentally shot with a gun or pistol, and that proofs of death and claim of loss were duly furnished, within sixty days, and that they had complied with all the terms and conditions of said policy, with a prayer for judgment and general relief.

On October 16, 1893, defendant filed general denial, general demurrer, and further answering averred that this suit was filed on April 20, 1891, and that no citation was served upon it until September 9, 1892, and that the contract of insurance contained a stipulation that unless suit was brought upon said contract within sixteen months after the accident occurred, then no action at law against the defendant should be had, and that plaintiffs' cause of action was barred for failure of plaintiffs to cite defendant for more than sixteen months after the accident occurred. Defendant further answered that if Dock Williams was killed, he was killed intentionally by some person, and was not accidentally killed, and that said killing was caused by unnecessary exposure to danger on the part of Williams. Trial was had before the court without a jury, and judgment rendered for plaintiffs. Motion for new trial was overruled, to which defendant excepted and perfected its appeal to this court.

First assignment of error: "The court erred in not sustaining defendant's plea in bar, and of limitation, and in rendering judgment for plaintiff."

The petition was filed April 20, 1891; a non-resident notice was issued and served upon the defendant in Detroit, Michigan, on the ——— day of June, 1891; the defendant refused to answer in the cause, and the court refused to enter judgment by default because the defendant had not been legally cited and such judgment would be void. On September 7, 1892, a citation issued to Gregg County, and on the 9th of that month was served upon a local agent of defendant in Longview; after this service, defendant answered at the next term of court.

The policy contains a stipulation that no action at law shall lie against the defendant unless it is begun within sixteen months from the date of the injury. The suit was instituted within the time to which the policy limited it, and it does not appear that its prosecution was abandoned. On the contrary, it appears that plaintiff promptly tried to bring the defendant into court, and continued his efforts to do so until he finally succeeded. The condition in the policy should be construed strictly, and its terms should not be extended so as to include within its requirement intelligent diligence in the prosecution of the suit.

The second and third assignments raise the same question and are as follows: Second assignment: "The court erred in refusing to allow the witness William Caldwell to testify that Asberry Graves told him late in the evening of the night that Dock Williams was killed that he, Graves, was going home, and if he found Williams there he intended to kill him."

Third assignment: "The court erred in refusing to allow the witness Cap Evans to testify to the declarations made to witness by Graves, after Graves had bought cartridges in Sam Falk's store the night Williams was killed, and had loaded his rifle, that he, Graves, was going home, and if he found Williams there he intended to kill him."

The record does not disclose that there was any eye-witness to the killing of Dock Williams. Askew, the plaintiff, testified:

"I lived near neighbor to Asberry and Mollie Graves. On the night of August 29, 1890, between 10 and 11 o'clock, I heard a gun fire at the house of Mollie Graves, and about five minutes afterward I went over there and found the door of the house open and saw Williams lying on the floor inside of the house, dead, with a bullet hole in his head; there was no one in the house, and the door had a bullet hole in it. There was bad feeling between Graves and Williams."

Caldwell, witness for defendant, testified: "There was bad feeling between Graves and Williams, because of Williams going to Graves' house. About two weeks before Williams was killed I heard Graves tell Williams that if he did not stop going to his house and keep away from his wife he intended to kill him. Williams was killed August 29, 1890, in Mollie Graves' house by a gunshot wound."

Evans, witness, testified: "On the night Dock Williams was killed I met Asberry Graves on Broad street in Texarkana, between 8 and 9 o'clock; he had a Winchester rifle, and he went into Sam Falk's store, and Graves bought some cartridges for his gun, and he came out of the store. Graves told Dock Williams, in my presence, about four days before Williams was killed, that if Williams did not keep away from his house and his wife, that he intended to kill him. There was bad feeling between Graves and Williams on account of Graves' wife."

Each of the foregoing witnesses testified that they were well acquainted with Graves, saw him often before Williams was killed, but have not seen him since.

Bill of Exceptions No. 1, shows that the defendant offered to prove, and could have proved by the witness Caldwell, that late in the evening of the day that Williams was killed, Graves told witness that he was going home, and if he found William's there he intended to kill him. To this testimony the plaintiff objected, and the court sustained the objection and refused to allow the witness to testify.

Bill of Exceptions No. 2, shows that the defendant offered to prove, and could have proved by the witness Evans, that between 8 and 9 o'clock of the evening Williams was killed he was in Graves' company; that Graves had a Winchester rifle; that they went into Falk's store, and Graves bought Winchester cartridges, and after doing so he told witness he was going home, and if he found Williams there he intended to kill him. Plaintiff objected to witness testifying that Graves told him that he was going home, and if Williams was there he intended to kill him, and the court sustained the objection.

The policy sued upon contains the following exception from liability. "Intentional injury inflicted by the insured, or by any other person."

"If the declaration has no tendency to illustrate the question, except as a mere abstract statement, detached from any particular fact in dispute, and depending for its effect entirely on the credit of the person making the declaration, it is not admissible. But if any importance can be attached to it, as a circumstance deriving a degree of credit from its connection with the circumstances of the case, independently of any

credit to be attached to the speaker or writer, then the declaration is admissible." 1 Stark Ev., 47.

"If the declaration is in itself a fact in the transaction, or made by a party while doing an act, and serves to explain it, it is to be received in evidence as a part of the res gestae. But a recital of past transactions is not admissible, although it may have some relation to the act which the person may be doing at the time when he makes the declaration." Hayes v. Rutter, 24 Pick., 244-245. The declarations made by Graves was a circumstance tending to show that he killed Williams, and that he did so intentionally, and was quite material to the issue, whether Williams was killed intentionally or not. The court erred in not admitting the evidence.

The court should also have permitted the sheriff to testify that he had made search for Graves and that he could not be found. This evidence tended to show flight by Graves, and was a circumstance pointing toward him as the man who did the killing. The court did right in not permitting to be introduced in evidence an indictment charging Graves with the murder of the assured. The indictment was no sort of evidence of the truth of the fact it alleged, and was not an independent circumstance tending to prove anything.

It is urged that there was no proof of the death of the assured made to the company as required by the terms of the policy. The policy required such proof to be made, and the statement of facts in the record fails to show that such condition in the policy has been met.

The eighth assignment of error is as follows: "The court erred in overruling defendant's motion for new trial, for the reasons therein set forth, and in not granting defendant a new trial that it could have an opportunity to procure and use the testimony of Bertie Graves, which was material to defendant's defense, as is fully shown by the affidavits of said Bertie Graves and H. C. Hynson, both of which affidavits are made a part of defendant's motion for a new trial."

H. C. Hynson, attorney for defendant, made the following affidavit; in substance—a part of the motion for new trial: That since the trial of this cause, he had discovered evidence that was important and material to the defendant, which is here shown by the affidavit of Bertie Graves; that he never heard of, or had any knowledge of the evidence until he learned of the witness' existence and whereabouts on 22nd instant, and that she resided in the state of Arkansas, where affiant went to see her and procured her affidavit. Affiant says that he had used due diligence to prepare his case for trial; had talked with many persons and made exhaustive inquiries for the purpose of obtaining all the material evidence for the defense of this case, and that he never heard of, or knew of such a person as Bertie Graves, or that her testimony would be material in this case, until Sunday, the 22nd instant, when affiant went to her present residence at Stamps, Lafayette County, Arkansas, and procured her affidavit on the 23d instant. Affiant says that Bertie Graves is a negro girl about 16 years old; that her mother is dead; her

father, Asberry Graves, she has not seen for three years, and that she has no permanent home or residence, and affiant does not and did not know of any other person by whom the facts set forth in her affidavit could be proved, and that said testimony can and will be procured from her, and used on another trial of this cause. Affiant further says that none of the facts set forth in this affidavit were known to the defendant or its officers; that the defendant and its officers are residents of the state of Michigan, and that affiant has had the sole and exclusive management of the defense of this case, and that a new trial is not sought for delay, but that justice may be done, and affiant believes the evidence of Bertie Graves will produce a different result on another trial of this case.

Bertie Graves deposed as follows: "I am 16 years old; am a daughter of Asberry Graves and his wife, Mollie Graves; I lived in Texarkana before I came here. I remember the killing of Dock Williams; he was killed one night by a gunshot wound, in the house where my mother lived; I was in the house at the time. Asberry Graves came to the house and called to my mother to open the door; I heard him and knew his voice; right after this two shots were fired, and as soon as the shots were fired my mother and us three children run out of the house; we were all in bed at the time of the shooting. Dock Williams was there before I went to bed. I heard Graves tell Dock Williams at our house about a week before Williams was killed, that he, Graves, would kill Williams if he did not stop coming to our house. My mother, Mollie Graves, is dead; I have not seen Asberry Graves since the night Dock Williams was killed."

This evidence was very material to the defense; it was newly discovered after the trial, may produce a different result on another trial, and the failure to discover it sooner was not due to negligence on the part of appellant. The new trial should have been granted. Railway v. Forsyth, 49 Texas, 171.

The judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered June 12, 1895.