## C. I. T. CORPORATION v. WALTRIP.

### No. 12643.

Court of Civil Appeals of Texas. Fort Worth. March 5, 1932.

Rehearing Denied April 9, 1932.

Mack & Mack and Polk, Sansom & Terrell, all of Fort Worth, for appellant.

Elton M. Hyder, of Fort Worth, for appellee.

DUNKLIN, J.

The Smith-Waltrip Motor Company, a corporation, was engaged in the purchase and sale of automobiles in the city of Fort Worth. In sales made of cars as such dealer it was customary to take from the purchasers promissory notes secured by mortgage liens on the cars for a part of the purchase price. There would be an accumulation of such notes, and, in order to realize thereon before maturity, the dealer entered into a contract with the C. I. T. Corporation, whose principal office was in the city of Chicago, Ill., but who had a branch office in Dallas, Tex., where it had a permit to do business under the laws of this state, whereby that corporation took over the purchase-money notes and mortgages securing the same. By the terms of that contract the Smith-Waltrip Motor Company, hereinafter referred to as the dealer, promised and agreed to repurchase all cars which the C. I. T. Corporation might repossess for nonpayment of the notes and liens outstanding against them, and to pay over to the C. I. T. Corporation any unpaid balance on such notes. The dealings between the contracting parties extended over a considerable period of time and included a large number of purchase-money notes and mortgage liens on cars which had been sold by the dealer to customers.

The contract between the parties stipulated that, out of the funds realized from the notes taken over by the C. I. T. Corporation, it would set aside for the protection of the dealer against his responsibility certain sums on different cars and the dealer would be given credit for the amount so reserved as against any demand of the C. I. T. Corporation against the dealer for unpaid balances on the notes taken over.

On or about August 13, 1929, the Smith-Waltrip Motor Company sold and assigned to P. M. Waltrip all rights of every kind and character which that company owned arising out of the contract with the C. I. T. Corporation.

This suit was instituted by P. M. Waltrip against the C. I. T. Corporation to recover $5,268, with interest thereon, claimed as reserve credits held by the defendant under its contract above noted; and upon a trial of the case defendant admitted in open court that it was indebted to plaintiff for those reserve credits. In other words, defendant admitted the full amount of indebtedness sued for by the plaintiff.

The controverted issues in the trial of the case arose from the cross-action of the C. I. T. Corporation against the plaintiff as the successor in liability of the Smith-Waltrip Motor Company. The cross-action was for the amount claimed by the C. I. T. Corporation as the aggregate unpaid balances due on the purchase-money notes for 43 automobiles which were not included in plaintiff's suit. The record shows that the defendant had been unable to collect those notes and had repossessed the cars for which they were given, and the aggregate of the unpaid balances due on those notes amounted to approximately $6,500. The defendant alleged that it had repossessed the cars covered by the mortgages given to secure those notes,

and after so doing it had tendered the same to the dealer, Smith-Waltrip Motor Company, who had refused to accept them. And by reason of such refusal the defendant had been forced to sell them, and, having made such sales for the best price obtainable and credited the amount so realized against the amount that the plaintiff was owing, there was a balance remaining of $6,500, and upon the trial it was shown without controversy that those calculations were correct if the defendant sustained its allegation that the cars covered by the mortgages were in fact repossessed by the defendant and tendered to the dealer within the period of time specified in the contract, to wit, 90 days after default in payment of the respective notes.

The case was tried before a jury, to whom only one special issue was submitted. That issue, with the jury's finding thereon, is as follows: "Did the defendant, C. I. T. Corporation, tender to the Smith-Waltrip Motor Company and deliver to the Smith-Waltrip Motor Company at its place of business at Fort Worth, Texas, the cars listed in 'Exhibit C' of defendant's second amended original answer and thereupon demand of Smith-Waltrip Motor Company the balance due on the notes representing deferred payments on said cars? Answer: No."

Judgment was rendered in plaintiff's favor for the sum of $5,733.14, being the aggregate of the reserve credits admitted by the defendant as above noted, with interest thereon, and denying the defendant a recovery on its cross-action. From a denial of its cross-action the defendant has prosecuted this appeal.

The suit was instituted by the plaintiff on April 16, 1930, and the trial occurred on February 9, 1931. The defendant moved for a new trial, and one of the grounds relied on was newly discovered testimony of M. J. Lindsey, who was manager in charge of defendant's business in the city of Fort Worth during the months of May, June, July, and August, 1929. Attached to the motion was the affidavit of Lindsey in which he stated that the cars mentioned in the special issue after being repossessed by the defendant corporation were tendered and delivered to the Smith-Waltrip Motor Company upon its used car lot, and repeated demands were made of the motor company for the unpaid balance due on those cars; that the officers and agents of that company made repeated promises to pay such balances, but failed to do so. That thereafter affiant then removed the cars from the motor company's used car lot and sold them for the best obtainable cash price. According to his further testimony, such tender so made was within the time required for such tender in the contract between such company and the defendant corporation. There was also attached to the motion for new trial the affidavit of R. W. Born, who was the regional manager of the defendant corporation and stationed at Dallas. His affidavit was to the effect that immediately after plaintiff's suit was filed he undertook to locate M. J. Lindsey, with the view of using him as a witness upon the trial of the case in support of defendant's cross-action, although he did not then know what his testimony would be. The affiant stated that long before the trial of the case he was directed by the defendant to ascertain the whereabouts of Lindsey, who had moved from Fort Worth after he had severed his relations with the defendant corporation in August, 1929, some eight months prior to the institution of the suit, and that in obedience to that request affiant instructed certain agents and employees of defendant to make diligent inquiry from the acquaintances and friends of Lindsey residing in Fort Worth; that affiant telephoned to Wichita Falls to one Williams who affiant was advised could probably give Lindsey's address, but Williams was unable to furnish that information; that he was later told that Lindsey had located at Slioam Springs, Ark., and affiant put in a long-distance telephone call at that place, but was unable to locate him; that affiant gave instructions to certain of defendant's employees, Goodall and Buckley, to get in touch with Lindsey, but they were unable to do so; that some days after the rendition of the judgment affiant learned for the first time that M. J. Lindsey's father lived in Winnsboro, Tex.; that thereupon he made a trip to Winnsboro, and there learned for the first time that M. J. Lindsey was then in the vicinity of Longview or Kilgore, Tex.; that affiant then made a trip to Longview and Kilgore, but he was still unable to find Lindsey and never found him until March 5, 1931. Affiant further stated that until he saw and talked with Lindsey he did not know what his testimony would be upon the trial of the case.

The affidavit of E. A. Goodall, a subsequent Fort Worth manager of the defendant corporation, was also attached to the motion for new trial, and his affidavit and also the affidavit of M. J. Lindsey himself strongly corroborated the affidavit of Born with respect to the diligent efforts he made to find Lindsey prior to the trial of the case. Those affidavits were introduced in evidence, together with the oral testimony of Miss Myra Jenkins, who also testified that she too made diligent effort to locate Lindsey by making inquiry from his relatives and friends, all without success. She further testified that she had been in the employment of the C. I. T. Corporation since January, 1929; that Lindsey worked for the defendant corporation from January, 1929, to July, 1930; that he then went to Memphis and remained two weeks and returned to Fort Worth in July, 1930, after which time he left Fort Worth and she was unable to find him; that all her efforts to find him were made at the instance of the

defendant corporation. The testimony of Miss Jenkins that Lindsey did not leave the defendant's employment until July, 1930, was probably a mistake, since both he and Mr. Born testified positively that he left the defendant's employment in July, 1929.

Whether or not the cars were tendered to the dealer after they were repossessed by the defendant corporation was the only disputed issue, and was very material to plaintiff's cross-action, and we have reached the conclusion that there was an ample showing of diligence to procure Lindsey's testimony before the trial of the case.

█ If, as shown by the affidavits attached to the motion for new trial, defendant's representatives did not know prior to the trial of the case that M. J. Lindsey would testify that he tendered to the representatives of the Smith-Waltrip Motor Company the cars mentioned in issue No. 1, then no application for a continuance of the case to secure Lindsey's testimony could have been made, since a necessary showing therefor would have been an affidavit that his testimony would be material to the defense; and before consulting with the witness that affidavit could not have been made. And that excuse for not moving for a continuance was alleged in the motion for new trial. Article 2168, Rev. Civ. St. 1925.

█ The affidavits attached to the motion and introduced in evidence, and not controverted, conclusively showed the exercise of diligence to procure the testimony of Lindsey before the case was tried, and a sufficient excuse for failure to move for a continuance to get such testimony. Nor could it be said that Lindsey's testimony was merely cumulative of the testimony of Born, defendant's regional manager in Dallas, given on the trial, since the latter's testimony that the cars were tendered to the motor company was manifestly a mere conclusion drawn from certain facts, and not testimony that the witness himself made the tender as did Lindsey. Nor was it cumulative of Buckley's testimony, since the latter was only as to demands made for payments and refusal of those demands.

Representatives of the motor company in charge of its place of business in Fort Worth denied that a tender of the cars had been made, although they did not deny that the C. I. T. Corporation had repossessed those cars and had placed them in the used car lot of the motor company. Nor was there any denial of evidence offered by the defendant that it had made repeated demands of the motor company for the amounts due defendant from the motor company for unpaid balances due on the purchase-money notes given for those cars; one of those demands being by registered letter with written receipt therefor signed by one of the agents of the motor company in Fort Worth. The demands so made in connection with the motor company reasonably, to say the least, implied a tender to the motor company of the cars then on its premises; especially so, in view of an absence of any testimony from any source that the demand for payment of balances due on the notes was refused on a plea that the cars had not been formally tendered to the motor company, as testified by witnesses for the motor company, and by reason of which the appellant was denied a recovery in its cross-action.

In Wolf v. Mahan, 57 Tex. 171, the judgment of the trial court was reversed for failure to grant a motion for a new trial, based on newly discovered evidence. And in answering the contention that the newly discovered evidence was merely cumulative of other evidence introduced upon the trial by the losing party, the court said: "Evidence is not cumulative merely because former evidence may have indirectly tended to establish the same fact."

Further, the court quoted with approval from Mitchell v. Bass, 26 Tex. 377: "Where there can be any doubt of the justice of the verdict to refuse a new trial, when the party has really discovered new evidence of a conclusive tendency, would be against justice and precedent."

Following that quotation the court then said: "In the conflict of evidence, the justice of the verdict in this case is at least doubtful; and as the additional evidence sought to be adduced is evidence which the appellant is excusable for not having produced on the former trial, and is evidence bearing directly on a material issue, and which might probably lead to a different verdict, we think that the new trial should have been granted."

In Buford v. Bostick, 50 Tex. 371, the following is said: "That a new trial may be granted on the ground of surprise, even when such surprise is occasioned by a correct ruling of the court, and although negligence may be properly imputable to his attorney (if the party asking it has a meritorious cause of action and gross injustice will otherwise be done him), is well settled."

In Alexander v. Solomon, 15 S. W. 906, the Supreme Court of Texas held that a motion for new trial should have been granted when it was manifest that a gross injustice had been done by the judgment rendered, notwithstanding the negligence of counsel for the complaining party in failing to take proper steps to avoid the consequences of the error complained of.

We quote the following from the syllabus of Chinn v. Taylor, 64 Tex. 385:

"A new trial may be granted on the ground of surprise, even when the surprise may have been occasioned by a correct ruling of the court, and resulted from the attorney's negligence, if the party asking it has a meritori-

ous cause of action, and injustice would result from its refusal.

"When the excluded evidence showed, in connection with the entire case, that the plaintiff was entitled to recover if his evidence had been properly before the court, and after taking a non-suit he was retained on defendant's plea in reconvention and a judgment rendered against him, the refusal to grant a new trial was error for which, on appeal, the judgment was reversed."

See, also, Laird v. Bass, 50 Tex. 412; Houston & T. C. Ry. Co. v. Forsyth, 49 Tex. 171; Standard Life & Accident Ins. Co. v. Askew, 11 Tex. Civ. App. 59, 32 S. W. 31.

Under the circumstances related, and for the reasons noted, the assignment of error to the refusal of appellant's motion for a new trial is sustained, the judgment of the trial court is reversed, and the cause is remanded.