AMERICAN INDEMNITY CO. v. HUBBARD. (No. 8644.)

(Court of Civil Appeals of Texas. Ft. Worth. May 26, 1917. Rehearing Denied June 23, 1917.)

1. MASTER AND SERVANT ☞411—INJURIES TO SERVANT—WORKMEN'S COMPENSATION—AMOUNT OF RECOVERY.

Under Acts 33d Leg. c. 179, pt. 1, §§ 10, 15, and part 4, § 2 (Vernon's Sayles' Ann. Civ. St.

1914, arts. 5246ll, 5246nnn, 5246yyyy), as to payment of compensation and liability of indemnity companies, an injured employé suing an indemnity company in which the employer was insured, in the absence of agreement, is entitled to judgment in lump sum for the compensation already due and for weekly installments during the balance of the time in which he is entitled to compensation, but not to a lump sum judgment for the whole period.

2. NEW TRIAL ☞108(4)—GROUNDS—NEWLY DISCOVERED EVIDENCE—SUFFICIENCY.

In a servant's action for injuries wherein he obtained judgment, newly discovered testimony, as to which due diligence had been exercised, that before his alleged injuries he complained of the condition on account of which he sued was sufficient to require the granting of a new trial.

3. PLEADING ☞8(2)—CONCLUSIONS—WORKMEN'S COMPENSATION.

In an action against an indemnity company wherein the employer was insured, allegations that the employer did not fall within the exemptions from the operation of the act, and that plaintiff was an employé within the meaning of the act, and was entitled to compensation, are those of conclusions of the pleader, and are insufficient even as against general demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 13.]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by J. B. Hubbard against the American Indemnity Company and another. Judgment for plaintiff, and the Indemnity Company appeals. Reversed and remanded in part.

McMurray & Gettys, of Decatur, for appellant. Ratliff & Spencer, of Decatur, for appellee.

BUCK, J. Suit was instituted by appellee in the district court of Wise county against appellant and the Lone Star Gas Company for damages in the sum of $7,350. He alleged that the Lone Star Gas Company was a corporation owning and maintaining a gas pipe line in and through Wise county and doing a general gas business in said county, and that the defendant American Indemnity Company was an insurance corporation doing a general insurance and workmen's compensation business in the state. He alleged that he was employed by the Lone Star Gas Company to walk and inspect its gas line and right of way from Decatur to Alvord, and in the discharge of such duties it was incumbent on him to climb all banks, walks, grades, and ditches over and through which said pipe line ran, for the purpose of inspecting the same, and that while so engaged on October 6, 1915, and while climbing the bank at Scott's Branch, which was alleged to be steep and almost perpendicular, he fell and sustained injuries of a serious and permanent character, especially to his liver, abdomen, bowels, and stomach, causing and resulting in hernia. He further alleged that by reason of such injuries

he suffered both physical pain and mental anguish, and had been totally incapacitated from performing labor of any kind, either physical or mental, or from earning a livelihood by any means; that the Gas Company had by notices made and published informed the plaintiff and its other employés that said company had provided for payment for any injuries that might be sustained by its employés under the terms and conditions imposed by the Employers' Liability Act of the Thirty-Third Legislature, chapter 179 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), and that plaintiff had knowledge of said conditions, and, knowing the said gas company had so provided for compensation, fully agreed and accepted said employment and continued to work for said gas company, etc. He further alleged:

"That the Lone Star Gas Company did not and does not fall within the exemptions from the operation of the act of the Thirty-Third Legislature (chapter 179, § 2, part 1), and that as such employer not exempt it was the holder, of a policy with the American Indemnity Company, duly licensed, providing for the compensation in accordance with the said act of the Thirty-Third Legislature; that plaintiff was an employé within the terms and meaning of that word as defined in section 1, pt. 4, and that as such employé he met with accidental injuries as hereinafter set forth, and on account of which he was and is entitled to the compensation claimed and the payment of which has been refused."

Plaintiff alleged that he, at the time of his injuries, was receiving an average wage of $17.50 per week; that defendants gas company and indemnity company on the happening of the accident had been duly notified thereof, but had refused to pay him the weekly compensation as provided in the act aforementioned; that he had referred the matter to the Industrial Accident Board created by said act of the Thirty-Third Legislature for final ruling and decision, and that said board had proceeded in accordance with the provisions of said act to dispose of and finally determine the question of injury and compensation of plaintiff, and that said board did dispose of and determine such questions, but "that one of the interested parties hereto failed and refused to abide by said decision and decree of said accident" (evidently meaning Accident Board). Defendant Lone Star Gas Company answered by general demurrer and by plea of misjoinder of parties defendant, and by general denial. Defendant American Indemnity Company pleaded the general denial and misjoinder of parties defendant, and denied generally and specially the allegations in plaintiff's petition contained. The court overruled the American Indemnity Company's exceptions, to which said defendant excepted. The court peremptorily instructed a verdict in favor of the Lone Star Gas Company, but submitted the case to the jury as to the defendant American Indemnity Company under a general charge. The verdict of the jury was in favor of the Lone

Star Gas Company in response to the peremptory instruction, and against the American Indemnity Company: (1) For damages sustained up to the time of the trial, $355.50; and (2) for further damages $10.50 per week for 87 weeks. The court entered judgment for the plaintiff against the defendant American Indemnity Company in the sum of $1,260, and the indemnity company appeals.

[1] Under its tenth assignment, appellant urges error in the trial court's judgment for the full amount awarded in the verdict as a present, immediate recovery of same, as a lump sum, and we are of the opinion that this assignment must be sustained. Under part 1, § 15, of this act contained in the Acts of the Thirty-Third Legislature, Regular Session, it is provided that in cases where death or total permanent disability results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the "Industrial Accident Board." But in the absence of such agreement, as we construe the provisions of the act, plaintiff, when entitled to recover by suit, would be entitled to judgment for the aggregate weekly stipend to date of trial, and as to the remaining weeks for which the jury should find plaintiff was entitled to recover a judgment should be rendered for such amount, payable weekly. Part 1, § 10, of the act reads as follows:

"While the incapacity for work resulting from the injury is total, the association shall pay the injured employé a compensation equal to 60 per cent. of his average weekly wages but not more than fifteen dollars, nor less than five dollars, a week, and in no case shall the period covered by such compensation be greater than four hundred weeks."

2. Part 4, § 2, is as follows:

"Any insurance company, which term shall include mutual and reciprocal insurance companies lawfully transacting a liability or accident business within this state, shall have the same right to insure the liability to pay the compensation provided for by part one of this act, and when such company issues a policy conditioned to pay such compensation the holder of such policy shall be regarded as a subscriber so far as applicable under this act; and when such company insures such payment of compensation it shall be subject to the provisions of parts one, two and four and of sections 10, 17 and 21 of part three of this act, and shall file with the commissioner of banking and insurance its classification of premiums none of which shall take effect until the commissioner of banking and insurance has approved same as adequate to the risks to which they respectively apply and not greater than charged by the association, and such company may have and exercise all of the rights and powers conferred by this act on the association created hereby but such rights and powers shall not be exercised by a mutual or reciprocal organization unless such organization has at least fifty subscribers, who have not less than two thousand employés."

The liability of the Texas Employés' Insurance Association established by this act is for the payment of an ascertained amount weekly, and the liability of an insurance com-

pany transacting business and issuing a policy of insurance as provided in section 2, part 4, would be controlled by the terms of so much of the act as applies to the liability of the association. This error, however, would not call for a reversal of the judgment, but merely for a reformation thereof, but since, because of other errors presented, and which will be considered later, the judgment will be reversed, we call attention to this error in view of another trial.

One of the issues of fact presented in the record was as to the question of the permanent disability vel non of the appellee of the nature and extent of the injury, and whether or not the condition of inguinal hernia which the plaintiff claimed to have and to have resulted from the alleged accident, if it existed at all, existed prior to the alleged fall and injury, or arose by reason of such fall and injury. Plaintiff testified:

"It is not a fact that about two years before this injury I claimed to have this hernia or rupture. I did not tell old man Gibson two years before that I was ruptured. I claimed that about two years before that I fell off a log, and hurt my side but did not claim to be ruptured. I was off two days and got paid for that."

The witness S. B. Gibson testified as to this matter:

"I have known Mr. Hubbard about five years; ever since he has been here in Decatur. I don't know as I had a talk with him a couple of years ago about his condition. Once we wanted to carry out a split sleeve and put it on, and he just made the remark that we would have to lift it; that he could not; he was ruptured. That was something like two years ago; I couldn't say just how long. He said the rest of us had to do the lifting; he couldn't do it; he was ruptured, and could not lift."

As one of the grounds of appellant's motion for new trial, it was alleged that it had discovered since the trial the testimony of three witnesses, to the effect that plaintiff had the injury and hernia complained of at the time of the trial prior to the date of the alleged injury, and that plaintiff had admitted to these witnesses prior to the trial the existence of such injury and hernia. Attached to this motion were the affidavits of said witnesses, to wit, F. R. Dodds, Alfred Rankin, and N. N. Altman. Dodds swore that in June or July, 1914, when a certain pipe was about to be lifted onto a wagon, and when said Hubbard was present, said Hubbard stated that the rest of us would have to lift the pipe; that he could not lift it, as he had ruptured himself; that at another time when a blow-out had occurred on the gas line, affiant had a conversation with the said Hubbard at the reporting box back of the jail in Decatur, and said Hubbard was complaining of his right side, and asked affiant to feel it, and affiant did feel said side and felt a knot on the right side in front and just above the right groin, which knot or protrusion felt or appeared to be fully as large as a hen egg; that said Hubbard remarked then, "That is what I got

when I fell on that —— log;" that affiant then asked him why he did not lay off and rest until that side quit hurting him, and said Hubbard replied that he was no rabbit; that he was going to walk the line if it killed him; that this conversation took place about May or June, 1915.

Rankin's affidavit was to the effect that he was talking with the plaintiff some time in November, 1912, at the latter's farm, and in the course of the conversation the plaintiff told him that if he did not get better, he was going to have to quit the line; that he was "tore up inside." That affiant was not sure that he said he was ruptured, but that was the idea affiant got from what plaintiff said.

Altman swore that on several occasions prior to October, 1915, he heard Hubbard complain of his stomach and side, and make the remark several times that he was "tore up in his side."

[2] We are of the opinion that the court erred in not granting a new trial because of this newly discovered evidence. Proper averments were made in the motion as to due diligence to discover such testimony before the trial, and we think the testimony was material, and was not merely of an impeaching nature, as is urged by appellee. It is a matter of general knowledge among lawyers that persons who have knowledge with reference to a case pending, or on trial, will refrain from disclosing the same because they do not wish to be witnesses. But after the trial the restraint is removed, and they will talk more freely. While the question of whether or not the trial court should grant a new trial for newly discovered evidence is a matter largely within the discretion of such trial court, and the appellate court will not reverse a cause unless it is made to appear that such discretion has been abused, or that the appealing party has been denied a substantial right by reason of the overruling of the motion for new trial, yet we think, in this case that, in view of the closely contested issue as to the condition of the appellee's health prior to the alleged injury, and as to whether he in fact had, prior to October 6, 1915, the hernial trouble or rupture that he alleged was due to the injury from the fall on said latter date, the court erred in not granting a new trial. As was said by our Supreme Court in the recent case of Huggins v. Carey (Sup.) 194 S. W. 133:

"It must, of course, be and is the settled rule that a new trial should not be granted to secure evidence whose only effect would be to impeach a witness. However, it must be admitted to be also well settled that, though the newly discovered evidence impeaches and contradicts, this fact will be untenable as an objection to the proposed evidence, as to granting a new trial in order to secure it, where it tends to prove facts material to one of the issues in the case." Railway v. Forsyth, 49 Tex. 171.

[3] In view of another trial, it might be well to say we are also of the opinion that,

even as against a general demurrer only, the allegations as to the liability of the appellant, contained in that paragraph of the plaintiff's petition quoted hereinabove, were insufficient, and that in order to show the liability of the appellant under the policy of insurance issued by it, the general terms at least of the policy should have been alleged in order that the court might be advised upon the reading of the petition of the facts relied upon by plaintiff to establish the defendant's liability. We are of the opinion that this paragraph is subject to the criticism and objection made by the defendant below that it stated the conclusions of the pleader rather than the averments of fact.

For the reasons indicated, the judgment of the court in so far as it authorizes a recovery against the appellant is reversed, and the cause remanded. The judgment in favor of the defendant Lone Star Gas Company, no objection having been made thereto, is left undisturbed.

Reversed and remanded in part; undisturbed in part.