### LUMBERMEN'S RECIPROCAL ASS'N v. WARNER et ux.   (No. 644.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 14, 1921. Rehearing Denied Nov. 9, 1921.)

**1. Master and servant ☞388—"Dependent" parents within Compensation Act defined.**

In order to be a "dependent" parent within the Workmen's Compensation Act, it is not necessary for an old and crippled parent to exhaust all the resources of his life's work and face a dependent old age.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dependent.]

**2. Master and servant ☞417(5)—Dependency within Compensation Act held for jury.**

Whether parents worth about $12,000 were dependents of unmarried son under Workmen's Compensation Act held for the jury.

**3. Master and servant ☞417(5)—Charge on burden of proof as to dependency within Compensation Act held proper.**

In proceeding by parents under Workmen's Compensation Act, an instruction that the burden of proof was on them to show by a preponderance of evidence that they were dependent wholly or in part on the labor of their deceased son held to clearly place the burden of proof on them to establish their case by a preponderance of the evidence.

**4. Master and servant ☞417(5)—Charge held not erroneous in failing to define "dependent" within Compensation Act.**

In a proceeding by parents under the Workmen's Compensation Act to obtain compensation for death of a son, court did not err in failing to define "dependent" as used in a special issue submitting the question whether they were taking into consideration their conditions and circumstances, dependent wholly or in part on his labor for support.

**5. Master and servant ☞405(6)—Evidence of average daily wage as basis of compensation held sufficient.**

In a proceeding to obtain compensation for death of son under the Workmen's Compensation Act, testimony that the deceased at the time of his death was receiving $2.50 per day as daily wages was sufficient evidence upon which to base a finding that $2.50 was the average daily wages of the employés of the same class, there being no suggestion in the record that deceased was a favorite of the employer.

**6. Master and servant ☞417(5)—Charge held not erroneous as assuming compensation claimant's deceased son worked for year.**

A special issue in a compensation case "What was the average daily wage which was earned by the employés of the same class as deceased, working substantially the whole of the preceding year at the same or neighboring place," etc., held not subject to the criticism that it assumed and advised the jury that deceased had worked for defendant employer substantially the whole of the preceding year.

**7. Master and servant ☞417(5)—Charge as to computation of average daily wage in compensation case held proper.**

In proceeding to obtain compensation under the Workmen's Compensation Act for death of son, court did not err in charging the jury that, in case they were unable to ascertain average daily wages of deceased, they could compute it in any manner that might seem just and fair to the parties, in view of part 4, § 1, subd. 3, of the Act.

**8. Master and servant ☞417(5)—Error in attorney's argument in compensation case cured by charge.**

If it was error for attorney to tell jury in proceeding under the Workmen's Compensation Act "that, under the Compensation Law, where a person was killed, that his dependents were entitled to recover compensation for his death," it was cured by a subsequent instruction to disregard such argument.

**9. Master and servant ☞404—Criminal record of deceased son of compensation claimants properly excluded.**

In proceeding to obtain compensation for death of son, where dependency was at issue, criminal record of deceased was properly ex-

cluded from the jury where it was introduced to show that parents had paid fines and attorney's fees.

**10. Master and servant ⊚⇒418(5)—Exclusion of evidence in compensation case held not prejudicial.**

In proceeding to obtain compensation for death of son, insurer, appealing from a judgment sustaining the award, cannot complain of exclusion of evidence that claimants received $2,000 insurance after the death of their son, in the absence of a showing that this testimony was the only testimony offered raising the issue that dependency had ceased, and there being no request to submit such an issue to the jury.

**11. Master and servant ⊚⇒417(9)—Judgment providing for execution for weekly compensation held proper.**

The district court sustaining an award for compensation for death of servant did not err in providing in the judgment for issuance of execution upon the weekly installments of compensation provided for therein.

**12. Master and servant ⊚⇒417(5)—Permitting jury to compute average weekly wage in compensation case held not error.**

In proceeding under Workmen's Compensation Act, the district court did not err in permitting jury to compute the average weekly wage of the deceased servant where it made the finding of the jury its own by incorporating it in the judgment, assuming that the determination of the weekly wage is only an administrative act.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Proceeding by G. R. Warner and wife under the Workmen's Compensation Act, to obtain compensation for the death of a son, Richard Warner, opposed by the Foster Lumber Company, employer, and the Lumbermen's Reciprocal Association, the insurer. From a judgment of the district court sustaining award of compensation, the insurer appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Fairchild & Redditt and Mantooth & Collins, all of Lufkin, for appellee.

WALKER, J. This is an appeal by Lumbermen's Reciprocal Association from a judgment rendered against it in favor of appellee, sustaining an award of the Industrial Accident Board in their favor. Richard Warner was the son of G. R. Warner and wife, and at the time of his death was in the employment of the Foster Lumber Company, which carried a policy of industrial insurance with appellant. It is conceded that Richard Warner was insured under the provisions of this policy, and was killed while in the due course of his employment. At the time of his death he was about 22 years old, a single man, and made his home with his parents, G. R. Warner and wife. The case was submitted to the jury on the following charge:

"This case will be submitted to you on special issues, and you will answer such special issues as may be submitted you by the court.

"Special issue No. 1:

"Were the defendants, G. R. Warner and Mrs. Susan C. Warner, as parents of Richard Warner, deceased, taking into consideration their conditions and circumstances in life, dependent wholly or in part upon the labor of the deceased, Richard Warner, for support at the time of the accident which resulted in his death? You will answer this 'Yes' or 'No' as you may determine from the evidence."

(To this question the jury answered: "Yes.")

"Special issue No. 2:

"What was the average daily wage which was earned by an employé of the same class as the deceased, Richard Warner, working substantially the whole of the immediate preceding year in the same or a neighboring place as that which the said Richard Warner was working at the time of his death and some time prior thereto? You will answer this by stating the amount per day, in dollars and cents.

(To this question the jury answered: "$2.50 per day.")

"You are instructed that the burden is upon the defendants to show by a preponderance of the evidence that they were dependent wholly or in part upon the labor of Richard Warner, and if the defendants have so shown by a preponderance of the evidence you will answer special issue No. 1 'Yes'; but, if they have failed to show by a preponderance of the evidence that they were dependent wholly or in part upon the labor of Richard Warner, you will answer special issue No. 1 'No.'

"You are charged that in passing upon special issue No. 1 that a gift or gifts from Richard Warner to his mother and father would not, of itself, show that they were dependent upon him; but you will look to all of the evidence in the case in passing upon the question before you. You are the sole and exclusive judges of the weight of the evidence and credibility of the witness, but the law you will receive from the court as contained in this charge and be governed thereby." ·

Court's charge No. 2, requested by plaintiff, and given to the jury:

"You will disregard in your deliberation the remarks of counsel for the defendants telling you in substance and effect that defendants, under the Compensation Law, are entitled to recover."

Special charge No. 1, requested by defendant and given to the jury:

"You are charged that, in case you are unable to ascertain the average daily wage which was earned by Richard Warner, deceased, at the time of his death by ascertaining the average daily wage which was earned by an employé of the same class as the deceased, Richard Warner, working substantially the whole of the immediate preceding year in the same or neighboring place as that which the said Richard Warner was working at the time of his

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

death, and some time prior thereto, then you will compute the average daily wage in any manner that may seem just and fair to the parties to this suit."

. Appellant asked for a peremptory instruction in its favor, and also excepted to the giving of issue No. 1, on the ground that the undisputed facts showed 'hat the father and mother were not dependent, within the meaning. of article 5246—15, Complete Texas Statutes 1920. As bearing on this issue, this article reads:

"The compensation provided for in the foregoing section of this act shall be for the sole and exclusive benefit of the surviving husband, * * * dependent parents," etc.

At the time of the death of their son, G. R. Warner and wife owned the following property:

Real property:

| Abst. No. | Original Grantee. | No. Acres. | Value. | |
|---|---|---|---|---|
| 39 | Thos. Quevade | 58 | $1,450 00 | |
| 39 | Thos. Quevade | 22 | 330 00 | |
| 38 | J. A. Prado | 116 | 1,740 00 | "at least." |
| 40 | J. L. Quinalty | 5 | | |
| | "house worth $1,200, worth great deal more than" | | 1,500 00 | |
| | | | | $5,020 00 |

Personal property:

| Angelina county: | Value. | |
|---|---|---|
| 3 horses | $ 300 00 | |
| Dog | 50 00 | |
| Automobile | 1,040 00 | |
| 20 head cattle, rendered at | 200 00 | |
| 150 head hogs, rendered at | 300 00 | |
| Liberty county: | | |
| 35 or 40 head cattle (give same value per head as Angelina county cattle) | 400 00 | |
| 150 head hogs (give same value per head as Angelina county hogs) | 300 00 | |
| | | $2,590 00 |
| | | $7,610 00 |
| Bank account, around | 300 00 | |
| | | $7,910 00 |

We believe the following statement from appellees' brief reflects the facts on which they rely to establish dependency within the meaning of the quoted section of the Workmen's Compensation Act, viz.:

"The evidence on the proposition of dependency shows:

"That G. R. Warner and wife, Susan Warner, father and mother of deceased Richard Warner, were 60 and 55 years old respectively; that the father had been ruptured four years previous, and had not been able to do manual labor as before his injury; that the Warner family now consists of Mr. Warner and wife; that the deceased, Richard Warner, was 22 years old, and still single; that he had lived at home all of his life, as one of the family, only when he would be away occasionally at work, but that he was never away more than a month at a time; that when the son, Richard Warner, was at home he worked on the farm and helped his father with the stock, and did anything that was to be done around the place, and also helped his mother a great deal, doing anything from the washtub to dish-washing, milking, cleaning the yard off, cooking, or anything else; that Richard Warner had been with his parents all of his life, and from the time he was large enough, he had been working; that Richard Warner had always assisted his father and mother in any sort of work around the place; that he had given his father money at various times; that Richard Warner had contributed to his mother from time to time, giving her $8, $10, or $15, $45 being largest amount; that Richard Warner had only been away from home 8 or 10 day when he was killed; that when he left home this time he said, 'I am coming back in April and I am going to stay at home;' that Richard Warner's services were worth at the time $2.50 or $3 a day; that when the father had to hire hands to do the work that Richard did he had to pay from $2.25 to $2.50 and board; and that the son was worth more to the father than any man he could hire, because he knew more about the business.

"Mrs. Warner, mother of deceased, testified that during his lifetime he lived on the farm with his father and mother; that son lived with them practically all the days of his life; that Richard Warner usually did anything in the way of work there was to be done about the place; he worked in the field, fed the stock, milk the cows; he washed the dishes, and 'I never washed without him helping when he was at home'; that at the time of his death he was the only child staying at home; that the son would buy parts for the automobile, and that he would keep it up; that Richard Warner contributed to her in other ways; he gave her from $8 to $10 to $15 at different times, and that during one six weeks, he gave her $45, and he told her to use it for anything that she needed it for.

"Mrs. Warner further testified: As to whether he was a constant worker during the time he was at work, he was as good a worker as any boy as she ever had been about; that she had raised two boys and had seen lots more of them raised, and he (Richard Warner) was as constant a worker as any she had ever seen; that he was not a lazy child, and never had been a lazy child; that she is 55 years old, and Mr. Warner is 60 years old, and, of course, we are both declining in years, as everybody does at that age; that among other things around the place that her son (Richard Warner) would do was such as cutting wood and milking cows."

[1, 2] The construction of this article, as it relates to dependent parents, was before the San Antonio Court of Civil Appeals in Southern Surety Co. v. Hibbs, 221 S. W. 303. We have given that case our most careful consideration, and approve the conclusion reached by Judge Fly, not only as applied to the facts of that particular case, but also in his statement of the law. As said by Judge Fly:

"The question of dependency is one of fact rather than a question of law, and each case must rest on its own facts."

Were G. P. Warner and wife really dependent on their deceased son? He contributed money to their support, worked for them as a farm hand, cooked, washed clothes, and cleaned house for his mother. He did many other things for their comfort and support. True, by using the funds they had accumulated to care for them in their fast-approaching old age, they could have hired these things done by others, but as a matter of fact they did not do this, but relied on their son to do these things for them. The law, as written in this act, does not require an old and crippled parent to exhaust all the resources of his life's work and face a dependent old age, in order to come within its terms. This point is made plain by the two cases cited by Judge Fly in the Hibbs Case, supra, from the Supreme Court of Georgia, Railway Co. v. Glover, 92 Ga. 132, 18 S. E. 406, and Fuller v. Inman, 10 Ga. App. 680, 74 S. E. 291. Hence, we conclude that the issue of dependency was raised by this record, and that the answer of the jury to special issue No. 1 must be sustained. As directly sustaining us in this conclusion, see the following additional authorities: Fennimore v. Pittsburg-Scammon Coal Co., 100 Kan. 372, 164 Pac. 265; Miller v. Public Service R. Co., 84 N. J. Law, 174, 85 Atl. 1030; Garcia v. Industrial Accident Com. of Cal., 171 Cal. 57, 151 Pac. 741.

[3] Appellant complains of the court's charge on the burden of proof. It does not seem to us that the jury could have been misled by this charge. We think it clearly places the burden on defendants to establish their case by a preponderance of the evidence, and applied directly to issue No. 1.

[4] The court did not err in failing to define the word "dependent," as used in issue No. 1. This question was directly presented to Judge Fly in the Hibbs Case, supra, and in reply thereto he said:

"The second assignment of error complains of the refusal of the trial judge to define the word 'dependent' for the jury. The court asked the jury: 'Were the defendants, W. M. Hibbs and Carrie Hibbs, as parents of J. D. Hibbs, deceased, taking into consideration their condition and circumstances in life, dependent wholly or in part upon the labor of the deceased, J. D. Hibbs, for support at the time of the accident which resulted in his death?' That question was clear and as open to the comprehension of an average jury as any number of definitions would have made it. The Legislature evidently did not deem it necessary to define a word so generally comprehended, for no definition of 'dependent' is given in the statute."

As the evidence in this case does not raise the issue that Richard Warner "had left his parents and gone to work for himself, with the intention of appropriating to his own use the wages earned by him, and that he would not thereafter have contributed anything to his parents," the court did not err in refusing to submit it to the jury.

[5-7] Due exception was taken to the submission of special issue No. 2, on the ground that—

"The record is devoid of any evidence as to the average daily wages earned by the employés of the same class as deceased, working substantially the whole of the immediately preceding year at the same or neighboring place at which the said Richard Warner was working at the time of his death, and for some time prior thereto."

We cannot agree with this proposition. There is evidence sufficient to take this issue to the jury. The record shows that Richard Warner worked for the Foster Lumber Company 9 or 10 days before his death, and on the trial it was agreed:

"That the deceased, Richard Warner, at the time of his death, was receiving $2.50 per day as daily wages."

There is no suggestion in this record that Richard Warner was a favorite of the Foster Lumber Company, or that they paid him over their schedule of wages. We believe that these facts are sufficient to raise the issue thus submitted to the jury. This charge is not subject to the criticism that it assumed and advised the jury that Richard Warner had worked for the Foster Lumber Company substantially the whole of the preceding year. Defendants' special charge No. 1 was properly submitted to the jury. The statute thus defines "average weekly wages":

"1. If the injured employé shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employé shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employé of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employé, or other employé engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons, it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties." Article 5246—82.

We believe the submission of this charge was authorized under the third section above quoted. In charging the jury, it is the duty

of the court to present all issues raised by the facts. Clearly, the statute does not mean that the record must show, as claimed by appellant, that the average weekly wage cannot be established under sections 1 and 2 before the court would be authorized to submit section 3, for, after naming these first sections, the article further provides: "Or other good and sufficient reasons."

[8] In testifying about the award made by the Industrial Accident Board to the defendants, Mr. Fairchild told the jury nothing that had not been plead by plaintiff. Nor was reversible error shown by the argument of Mr. Fairchild to the jury, in which he told them:

"That under the compensation law, where a person was killed, that his dependents were entitled to recover compensation for his death."

This argument was called to the court's attention when made, and excepted to on the ground that it "in effect told the jury that an answer in the affirmative to special issue No. 1 entitled defendants to recovery." At the time this exception was taken, the court did not stop Mr. Fairchild, nor reprimand him, but, as shown by the charge above given, he did instruct them to disregard the argument. If this argument was error, the error was cured by the charge.

[9, 10] The criminal record of Richard Warner was properly excluded from the jury. No legal liability rested on his parents to pay his fines and fee his lawyers. If they did this voluntarily, it could not raise an issue against dependency; rather, it seems to us, it would strengthen defendants' case and justify them in depending on their son to do things for them, and accept favors at his hands which otherwise they might not have done. We believe the court correctly excluded testimony showing that G. P. Warner and wife, after the death of their son, came into possession of $2,000 "insurance" money. The bill of exception does not show the source of this insurance. If it was an addition to the estate of the parents, the burden rested upon appellant to show this. Appellant says that this testimony was admissible to show that dependency, if found at the death of Richard Warner, had ceased. Their proposition is that—

"The question of dependency may be determined at any time during the period during which compensation runs."

If this is a sound proposition—which we do not determine—we say that the burden must rest upon appellant to show that dependency once established—and that issue was presented by the first question submitted to the jury—has ceased. That burden was not met by showing that defendants had received $2,000 insurance money without showing from what source it was received. We would add further that no issue was submitted to the jury making this testimony material. Question No. 1 limited dependency to the time of the death of Richard Warner. No question was asked, nor any requested, on the issue of determination of dependency, and appellant makes no showing that this excluded testimony was the only testimony offered raising such issue. If there was other testimony raising this issue, appellant should have requested its submission, and, having refused to ask its submission, he cannot complain of the exclusion of testimony tending to establish such an issue, without showing that the excluded testimony was all the evidence he had to offer, and its exclusion took the issue from the jury.

[11] The court did not err in "providing in the judgment for issuance of execution upon the weekly installments of compensation provided for therein." U. S. Fid. & Guaranty Co. v. Parker, 217 S. W. 195; U. S. Fid. Co. v. Parsons, 226 S. W. 420; Am. Ind. Co. v. Hubbard, 196 S. W. 1012; General Accident, Fire & Life Assur. Corp. v. Evans, 201 S. W. 705.

[12] Appellant advances the proposition that the court committed error in permitting the jury to compute the average weekly wage, on the ground that such compensation is "an administrative feature of the act to be administered by the Industrial Accident Board or court, and not by a jury." It is not necessary for us to determine this question. Clearly, the court did not err in submitting such an issue to the jury. If the matter finally rested with the court, he made such finding his own by incorporating it in the judgment. Even if the determining of the weekly wage is an administrative act, we think the court should be commended, rather than criticized, in seeking the advice of the jury on such issue, especially when the general issue has gone to the jury.

Having reveiwed all appellant's assignments of error, and finding no error therein, the judgment of the trial court is in all things affirmed.