## MILLS et ux. v. TEXAS EMPLOYERS' INS. ASS'N. (No. 1509.)

(Court of Civil Appeals of Texas. El Paso. May 17, 1923. Rehearing Denied June 14, 1923.)

Master and servant ⟚405(5)—Evidence in compensation case held not to show dependency of parents.

In proceeding under the Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz) to recover compensation for death, evidence *held* not to show that claimants, deceased's parents, were dependent upon him at the time of his death.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Proceeding under the Employers' Liability Act by J. S. Mills and wife to recover compensation for death of Garvin A. Mills, employee, opposed by the Texas Employers' Insurance Association, insurer. Claim was denied by the Industrial Accident Board, and on appeal to the district court judgment was rendered against claimants, and they appeal. Affirmed.

J. M. Reiger, of Desdemona, and Grisham Bros., of Eastland, for appellants.

Lawther, Pope & Leachman and Harry P. Lawther, all of Dallas, for appellee.

HIGGINS, J. Appellants, Mills and wife, filed claim with the Industrial Accident Board as dependents under the Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, Acts 5246h–5246zzzz) to recover compensation for the death of their son, Garvin A. Mills. Appellee was the insurer. The Board held that Mills and wife were not dependents of the deceased, and denied their claim. Thereupon they appealed to the district court, and upon trial before a jury a peremptory instruction was given to find against them. A verdict was returned and judgment rendered accordingly. In the court below it was agreed that the issue should be limited and confined to this question:

"Were plaintiffs dependent upon said Garvin A. Mills at the time of the death of the said Garvin A. Mills?"

The deceased was an employee of the Humble Oil & Refining Company, and on November 30, 1920, sustained injuries while in the discharge of duties in consequence of which he died. His wages were $160 per month. Upon the date of his death he was between 20 and 21 years old.

J. S. Mills testified as follows:

Age, 62; resided near Rienzi, Miss.; engaged in farming. He and his wife had eight living children, as follows: Minnie, about 30 years old; Mark, aged 28; Ed, aged 27; Anna, aged 21; Jessie, aged about 19; Jim, about 17 years old; Roy, aged about 14; Willie, aged about 25. Garvin was not living at home at the time of his death; had been away about three years.

"Direct Interrogatory No. 6: As to whether or not, prior to his death, the said Garvin A. Mills contributed in any way to my support, whether he contributed as a gift or otherwise anything of value to me or any one else of the family, no; he did not contribute in any way to my support. He gave me about 12 years' hard, honest work before he left home, but after he left home did not contribute anything to my support. He gave to the boys several presents, a saddle to one of them, the value of which was about $30, to another a suit of clothes worth about $25, and several other presents of small value. I do not remember the exact date these presents were made.

"Direct Interrogatory No. 7: As to whether or not myself or any member of the family received any contribution as coming from my son Garvin after his death, and as to what I received and by whom it was delivered, yes; after his death we received a check for $990 from the Woodmen of the World, and delivered to me and my wife by mail, which check was paid at the First National Bank, Corinth, Miss.

"Direct Interrogatory No. 8: At the time of the death of Garvin A. Mills I had three children that were under the age of 21; two of them were living with me at home, but one was not.

"Direct Interrogatory No. 9. As to whether or not Garvin A. Mills, during his lifetime, and while he was working away from home, ever at any time made contribution of anything of value to any of said minor children, and as to specifically what he contributed, when it was contributed, and whether or not such contribution was of value to said child or children receiving same, and whether or not said contribution was useful to said child or children, and as to whether or not such article or articles contributed consisted of article or articles such as I was accustomed to provide for the said minor child or children, he gave to Jim Mills a saddle in about the year 1918, the value of which was about $30, and he gave to Jim Mills at about the same time a suit of clothes, the value of which was about $25, and to Jessie he gave a pair of shoes, the value of which was about $5. These contributions were useful to said children, and, as I was unable to provide these things for said children at the time, he made these contributions in order to help these children out. * * *

"Cross-Interrogatory No. 1: It is a fact that, at the date of the death of my son, Garvin A. Mills, November 30, 1920, I owned a farm situate about 9 miles from Rienzi, Miss., consisting of 373 acres of land, about 100 acres of which was in cultivation, the balance being pasture and grazing land.

"Cross-Interrogatory No. 2: It is a fact that during the year 1920 I raised five bales of cotton and from 175 to 200 bushels of corn.

"Cross-Interrogatory No. 3: As to what, if any, live stock I had during the year 1920, and what if any farming implements, and what improvements I had on said farm during said year, and who comprised my family, and as to whether or not myself and said family were living upon said farm at the time of the death of my son, and how long we had been living on said farm, I had about five or six head of mules and two colts; my farming implements were worth about $50; one house and two cabins; and my family consisted of myself, my wife, and two sons. We were living on said farm at the time of the death of my son, and had been living on this farm five years.

"Cross-Interrogatory No. 4: As to what other revenue I derived from said farm during the year 1920 other than said five bales of cotton and 200 bushels of corn, about $20 out of cross-ties, and a small amount of lumber, between $40 and $60 worth.

"Cross-Interrogatory No. 5: As to whether or not it is a fact that, in addition to the revenues I obtained from my farm, I did some road contracting work, and bought and sold cattle and lumber, and as to approximately how much my income was from road contracting work and my dealing in cattle and lumber ties during the year 1920, yes; my income from road contracting in 1920 was about $20. My dealing in cattle was a failure. I lost money. My income from lumber and ties was between $40 and $60 out of lumber, and about $20 out of ties. * * *

"My son Garvin was about 20 years old when killed in 1920. It had been about 2½ or 3 years at the time of his death since he had been living at home. It is a fact that he ran away from home when was about 17 years of age, and for a while was in my part of the country, and that I heard he had gone to Texas, but that I did not know for sure where he was or what he was doing.

"Cross-Interrogatory No. 17: It is a fact that he did not send money to me or contribute to my support. He was not married. As to whether or not he left no dependents, he left his mother and two brothers. It is not a fact that Mrs. Mills, my wife, told me that she did not receive any money from him, and that he did not contribute anything to her support; she told me she did receive money from him.

"Cross-Interrogatory No. 8: It is a fact that at the time of the death of my son Garvin I was able to and did support my own wife and family—the best I could, which was very poorly."

Mrs. Mills testified:

"Direct Interrogatory No. 6: As to whether or not prior to his death the said Garvin A. Mills contributed in any way to my support, and as to whether he contributed as a gift or otherwise anything of value to me or any one else of the family, and as to the specific gift or contribution given, when it was made, its value and the circumstances under which it was made, he gave me $5 in 1919. Before he died he gave his brother, Mark Mills, $30 in gold to send to me, which I received on the 3d day of December, 1920. He gave a saddle to Jimmie, and a suit of clothes to Jessie, and $4 in cash, and to Jessie a pair of shoes, valued at about '$5. The suit of clothes was value at about $25 or $30, and the saddle at about $30.

"Direct Interrogatory No. 7: As to whether or not any member of the family or myself received any contribution as coming from my son Garvin after his death, and as to what it was, we received a check from the Woodmen of the World for $992, which came to us by mail.

"Direct Interrogatory No. 8: At the time of the death of my son Garvin A. Mills I had three children under the age of 21, and two of them were living at home.

"Direct Interrogatory No. 9: As to whether or not Garvin A. Mills, during his lifetime, and while he was working away from home, ever at any time made contribution of anything of value to any of said minor children, and as to specifically what he contributed, when it was contributed, and whether or not such contribution was of value to said child or children receiving same, and whether or not such contribution or contributions consisted of article or articles such as I was accustomed to provide for said minor child, or children, yes; he gave a saddle to Jimmie in 1918, which was worth about $30, and he gave to Jessie about the same time a suit of clothes worth about $25 or $30; also a pair of shoes worth about $5 and $4 in money. These contributions were useful to said children."

Mark Mills, a brother of the deceased, testified in the case, but his testimony need not be detailed, as it adds nothing of importance to the testimony of Mr. and Mrs. Mills.

In at least three different cases our courts have construed the term "dependent parents." See Southern Surety Co. v. Hibbs (Tex. Civ. App.) 221 S. W. 303; Millers, etc., v. Green (Tex. Civ. App.) 237 S. W. 979; Lumbermen's, etc., v. Warner (Tex. Civ. App.) 234 S. W. 545, affirmed upon writ of error (Tex. Com. App.) 245 S. W. 664. In each of these cases awards in favor of the surviving parents were upheld, but in each of them the facts were radically different from the present case. Under the test of dependency announced in those cases we are of the opinion that the undisputed evidence in this case discloses that appellants were not "dependent parents" of the deceased within the meaning of our Employers' Liability Act, and the Industrial Accident Board and trial court properly so held.

Affirmed.