# TRADERS & GENERAL INS. CO. v. W. L. TURNER.

### No. 14180.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 28, 1941.

Rehearing Denied April 11, 1941.

John D. McComb, of Jacksboro, and Lightfoot, Robertson & Gano, of Fort Worth (E.· B. Robertson, of Fort Worth, of counsel), for appellant.

Lowell Crosier and Gean B. Turner, both of Cleburne, and Allen Crowley, of Fort Worth, for appellee.

SPEER, Justice.

This suit arose under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. W. L. Turner was the employee, and will be referred to in this opinion as appellee; R. H. Dearing & Sons were the employers and will be referred to as such; and Traders & General Insurance Company was the insurance carrier; an adverse judgment to it having been entered, that company has perfected an appeal and we shall refer to it as appellant.

. In so far as is necessary to state, from the record appellee received two accidental injuries in the course of his employment; one on March 8th and another on March 29, 1939. He became totally and permanently incapacitated to labor on about August 15, 1939, as a result of both said injuries. His allegations were sufficient to entitle him to have his average wage rate fixed under either of Subsections 1, 2 and 3 of first Section 1, Article 8309, R.C.S.

Appellant's defense rested upon its general denial. There were special denials under oath of competent notice of the accident and injury, claim for compensation and notice of appeal from the award of the Industrial Accident Board, but in so far as this appeal is concerned all but the general issue have gone out of the case.

The case was tried to a jury on special issues. The verdict was favorable to appellee. There were findings that appellee had not been engaged in that labor for substantially a year next preceding the date of the accidents, and that no other person engaged in similar employment at that time and place or in that vicinity had worked for substantially the whole year next preceding the date of the first accident. Under a special issue based on 3rd subsection of Section 1, of the statute above referred to, the jury found that a just and fair average daily wage rate was $4.25. It was found that appellee was totally and permanently incapacitated to labor and facts were found justifying a lump sum settlement. Judgment was entered for a recovery of the total sum of $5,010.60, the then value of compensation at $14.70 per week for 401 weeks, beginning with August 15, 1939.

Appellant's first three propositions complain of the submission of Special Issue 27. This question inquired what would be an average daily wage rate for appellee, fair and just to both parties to the suit. It is argued that it was error because: (a) The wage rate should have been fixed under first Subsection 5 of Section 1, Article 8309, R.C.S.; (b) $4.25 per day found by the jury was not a just and fair average wage rate as between the parties, and (c) if based upon Subsection 3 as was attempted, the just and fair *weekly* wage rate and not the average *daily* wage rate should have been found.

.The first three propositions are properly briefed together. There is some testimony in the record to the effect that appellee was in the employ of his employer at all times during the year preceding the dates of his injuries; but it is indisputably true that the work was intermittent, not continuous; that he worked by the hour when there was work to be done; that the timekeeper kept appellee's time along with all other employees and when he had worked enough hours to make a day or even a half day he was paid on a basis of $4.25 per day. The uncontroverted testimony of the timekeeper, introduced by appellant, shows that appellee worked only 252 days during the year. In appellant's proposition it states: "The undisputed evidence shows that the character of work plaintiff was engaged in at the time of his injury or injuries, and for the whole of the immediately preceding year was irregular and intermittent, and that neither he nor any other employee of his class could work the whole of any year." Similar state-

ments are found throughout appellant's briefs. We may assume from these things that no contention is made that appellee's wage rate could be fixed under either Subsections 1 or 2 of Section 1, Article 8309; however, special issues were submitted on each of said subsections and the answers, supported by competent evidence, confirm that as a fact. Appellant contends that the wage rate should have been fixed under Subsection 5 of Section 1, Article 8309, which reads: "The average weekly wages of an employé shall be one-fifty-second 'part of the average annual wages." In this case appellee had no annual, or even monthly or weekly, wage, but worked by the hour. Clearly Subsection 5 could not be applied, but resort must be had to Subsection 3 which provides in effect, when the wage rate cannot be fixed under either Subsections 1 or 2, or for other good and sufficient reasons it is impracticable to compute the average weekly wages, it shall be computed by the Board (or court) in any manner which may seem just and fair to both parties. All these conditions appear to have existed and the rate complained of was found under said Subsection 3.

■ If we properly understand appellant's contention presented under this group of propositions, it is to the effect that it is unjust and unfair to it to have the rate based upon the average daily wage rate of the injured employee as of the time of the accident, but that the weekly rate should be computed by dividing the total amount received in wages during the preceding year by 52 and award him compensation on a basis of 60% of the result so obtained. We do not so understand the many holdings of the courts. We have been cited to no case of such import. It has many times been held that our Workmen's Compensation Act is not intended to compensate an injured employee merely for the loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full time basis. Texas Employers Insurance Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399; Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W. 2d 356, writ refused; Traders & General Ins. Co. v. O'Quinn, Tex.Civ.App., 111 S. W.2d 859, writ refused.

■ The complaint leveled in the briefs by appellant to special issue 27, upon the ground that it asked for a just and fair average *daily* wage rate when the law provides that the just and fair *weekly* wage rate may be fixed by what is just and fair to both parties to the suit, finds no support in the objections presented to the trial court before the submission of his charge as provided by Article 2185, R.C.S., and it cannot be urged for the first time on appeal. "It is fundamental that the appealing party, who presents error in the giving of an issue, must be relegated to and bound by the objections made by him to such issue. He cannot enlarge his objections either by his assignment of error, or by any supporting proposition." Le Sage v. Smith, Tex.Civ. App., 145 S.W.2d 308, 311, writ dismissed, correct judgment. Even if the point could be considered by us, we think no reversible error is presented, since by Subsection 3 of Section 1, Article 8309, much latitude is given to the Board, Court and jury in arriving at a just and fair average wage rate when it cannot be computed under Subsections 1 or 2. When a just and fair average *daily* wage rate has been found, under the liberal rule invoked it is only a matter of calculation to ascertain the weekly rate. See Lumbermen's Reciprocal Ass'n v. Warner, Tex.Civ.App., 234 S.W. 545, affirmed by Commission of Appeals 245 S.W. 664; Texas Employers' Insurance Ass'n v. Russell, Tex.Civ.App., 16 S.W.2d 321, writ dismissed; and United States Fidelity & Guaranty Co. v. Morgan, Tex.Civ.App., 18 S.W. 2d 810, writ dismissed. We see no worthwhile merit in the contentions raised by these three propositions.

For reasons which will later appear in this discussion, we pass the fourth proposition and take up numbers five, six and seven. These propositions relate to the definition given by the court of the expression "producing cause" used in connection with Special Issue 13, as well also to the issue as propounded. Special Issue 13 was in this language: "Do you find from a preponderance of the evidence that the personal injury, if any inquired about in issues 1 to 5 inclusive, and the personal injury, if any, inquired about in issues 6 to 10 inclusive, were a producing cause, as that term is herein defined, of the total incapacity, if any, inquired about in Issue No. 11?" The issue was answered in the affirmative. In the early part of the court's charge a definition was given of the term "personal injury"; it was in the form approved by the courts many times. Preparatory to the submission of Special Issue 13, quoted above, the court, among other definitions, also gave this one: "By the term 'producing cause' is

meant such a cause as naturally results in the incapacity to perform the usual tasks of a workman, and such cause as is at all times continuing and unbroken cause of such incapacity and without which such incapacity would not have occurred."

■■■ Complaint is made of the definition of "producing cause," given by the court, upon the ground that it is confusing to the jury, in that it embraces certain elements of the term proximate cause, which has no place in a compensation case; that it is and was calculated to and did lead the jury to believe that if a disability to appellee resulted from an injury, he should receive compensation even if the injury was not damage or harm to the physical structure of the body and such diseases or infections naturally resulting therefrom. We think the better practice in such cases as this would be for the court to submit the issues in language which, when answered, will conform as nearly as possible to the language of the statute. It is only such injuries to the physical structure of the body and the diseases and infections resulting therefrom, causing disability, that are compensable. It must be made to appear that the disability resulted from the injury and the disease or infection which naturally followed. This same idea, however, has been conveyed by our courts in such language as, that the injury must be shown to have been the producing cause of the disability. There must be established a causal connection between the injury and the disability before recovery can be had, but if the injury is shown to have been the producing cause and all other necessary requisites are established a recovery will be sustained. Travelers' Insurance Co. v. Peters, Tex.Com.App., 14 S.W.2d 1007. An element of whether or not an injury is a producing cause of disability, is the continuity of the chain of causation between the alleged injury and the disability for which compensation is sought. Texas Employers' Insurance Ass'n v. Burnett, Tex. Civ.App., 77 S.W.2d 742. The Burnett case was reversed by the Supreme Court in 129 Tex. 407, 105 S.W.2d 200, for insufficient evidence to support the facts above related, but the principle announced was not criticised, and we think it a correct one. Our courts have had occasion many times to discuss cases submitted to the jury upon the theory of a "producing cause" to which divers and sundry objections have been presented. None, so far as we are able to find, have been reversed because they were thus submitted. Some of those in which the question has arisen are Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354, writ dismissed; Safety Casualty Co. v. Walls, Tex.Civ.App., 117 S.W.2d 879, writ dismissed; Texas Employers Insurance Ass'n v. Hitt, Tex.Civ.App., 125 S.W.2d 323; Traders & General Ins. Co. v. Ray, Tex. Civ.App., 128 S.W.2d 80, writ dismissed, correct judgment; Southern Underwriters v. Dumas, Tex.Civ.App., 130 S.W.2d 938, writ refused. In the last cited case the definition given of "producing cause" was substantially the same as that given in the case at bar. In Texas & Pacific Railway Co. v. Short, Tex.Civ.App., 62 S.W.2d 995, writ refused, it was held that the term "producing cause" is not such a term as requires a definition by the trial court. However, if a definition is given, it should be a correct one. Under authority of the Dumas case supra, the definition given in this case was correct, and presents nothing at which appellant can complain.

The submission of Special Issue 13 and its answer are challenged by appellant in this group of assignments because, it is claimed, that the finding of the jury to the effect that the injuries sustained by appellee were the producing cause of his disability was without support in the evidence and was based upon surmise and speculation and, further because there was no finding by the jury that appellee's disability was the direct result of some damage or harm done to the physical structure of the body and such diseases and infections as naturally resulted therefrom, the verdict was insufficient to support the judgment.

■■■ We do not think the testimony in this case is of such a nature as to be classed as "speculation, surmise or guess." Whether or not the disability of appellee was the natural result of some damage or harm to the physical structure of the body and disease and infection resulting therefrom depends upon the expert testimony of physicians, who were witnesses at the trial.

The uncontradicted evidence shows that appellee received two accidental injuries while in the course of his employment, one on March 8, and another on March 29, 1939. On the first occasion he, with others, was carrying a joint of heavy gas pipe; a man in the center released his hold forcing the weight upon appellee from which circumstance he sustained a strain to his back, nerves, muscles of the abdomen and to his

right testicle. The testicle became swollen and gave him much pain; he remained away from work about two weeks and returned, resuming his labors; on March 29, 1939, he was engaged in carrying a pipe when the employee at the end opposite to appellee dropped the pipe causing it to fall from appellee's shoulder, passing down the front part of his body and striking the previously injured testicle. The organ became inflamed, hardened and badly swollen. He consulted a physician and at the end of about seven days it became necessary to remove the testicle. The surgeon who performed the operation testified that it was ascertained that the cord to which the testicle was attached was enlarged to the size of one's thumb whereas its normal size was about as large as a lead pencil; a small section of the tissue was quickly removed and a microscopic examination made to ascertain if there was any malignant trouble there; the examination revealed a type of tumor known to medical science as seminoma, a type of cancer; then the whole testicle and cord were removed; that it is not considered among the medical profession that a traumatic injury to the testicle will necessarily produce seminoma; cancer cells are believed to grow in different parts of the body; some grow awhile and stop, some continue to grow and in that case we have cancer; we usually consider that irritation, trauma and the like can be a contributing cause to start those cells to growing when they have been somewhat dormant in the past; the witness said he did not think anyone could say that those cells would not have given any trouble without trauma, "We don't know," he said. Other physicians testified as experts in respect to those things above stated except as to the actual operation and the microscopic examinations of the tissues removed.

■ Other testimony by physicians and surgeons was more specific relating to injuries which would excite and start active growth of cancer cells in the body. In response to hypothetical questions asked, Dr. Pickens said in substance, that in such cases as the one inquired about there is nearly always the history of an injury that aggravates and excites the cells to growing; that he believed if cancer cells were present, such a bruise to the testicle as described by counsel under the conditions mentioned would be sufficient to start the cells to growing and produce cancer; he said he didn't know of anything else than the circumstances related by counsel, that could have caused the cancer cells to become active. Dr. Cook said he had treated appellee since the dates he claimed to have been injured and that appellee was suffering from a malignant trouble in the right testicle; it was known as carcinoma; this, he said, is a tumor springing from tissues of a small tube or cord lying on top of the testicle; a heavy strain or blow on the testicle might produce what is known as carcinoma. Dr. O'Bannon said it was recognized among the medical profession that there are cancer cells in the bodies of some persons which lie dormant perhaps for years and if such person receives a traumatic injury to that part of the body it may cause those cells to become active and develop into a cancerous growth. We think the testimony referred to presents much more than a scintilla of evidence and removes the case from the realm of pure speculation and surmise as contended for by appellant.

We have not attempted to relate all of the testimony offered by either side on the point, but only sufficient, as we view it, to show that a jury question was raised and that it was proper to submit the question for determination. Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581. Appellee's testimony disclosed that he was in sound health and had never had any trouble with his testicle prior to the time of the two accidents. The jury's answer to the issue was favorable to appellee; it had support in the evidence and is binding upon this court. What we have said in this connection is sufficient to show that we hold there was support in the verdict for the judgment entered.

■ By its eighth proposition appellant contends that Special Issue 13, quoted above, is multifarious, in that it inquires if the injuries received on March 8, and on March 29, 1939, were the producing cause of appellee's incapacity. In the interest of brevity we are here referring to the dates of the injuries rather than the special issues 1 to 10 inclusive, as was done in the Special Issue. The record discloses that this case was tried upon the theory that the two injuries resulted in appellee's disability. The testimony of some of the doctors reveals that the strain on the first occasion produced the enlarged, inflamed and hardened condition of the right testicle and that the second injury to the same organ which bruised it, contributed to producing the

carcinoma which caused appellee's disability. In other words, the two injuries and the results arising therefrom constituted the basis and determining factor in appellee's right of recovery. The two injuries, taken together, constituted the final ultimate issue. It was therefore proper to group the fact issues necessary to make up the ultimate issue. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517. In cases like this, where a group of facts are relied upon to make up the ultimate issue, it is not only permissible but often becomes indispensable to group them and present them in a single inquiry, to enable the court to ascertain if the ultimate end sought has been established. Speer's Special Issues, Sect. 187; 41 Tex. Jur., p. 1107, Sect. 276. For its contention that the issue is multifarious, appellant relies largely upon Traders & General Ins. Co. v. Shelton, Tex.Civ.App., 130 S.W.2d 903. In the Shelton case the inquiry was whether the plaintiff "has or will" suffer disability from the injury sustained. It was held that the objection was well taken; but the court based the holding mainly upon an explanatory charge given in connection with the issue, distinguishing that case from several others there cited, which hold to the contrary. In the absence of the type of definition given in connection with the inquiry in the Shelton case, supra, it has many times been held that an inquiry of whether or not a party "has or will" suffer disability is not open to the objection of duplicity. See Traders & General Ins. Co. v. Patterson, Tex.Civ.App., 123 S.W.2d 766, writ dismissed; Fidelity & Casualty Co. of New York v. Branton, Tex.Civ.App., 70 S.W.2d 780, writ dismissed; Traders & General Ins. Co. v. Baker, Tex.Civ.App., 111 S.W. 2d 837, writ dismissed; Maryland Casualty Co. v. Foote, Tex.Civ.App., 139 S.W.2d 602, writ refused; United Employers Casualty Co. v. Knight, Tex.Civ.App., 139 S.W.2d 613, writ dismissed, correct judgment.

We overrule the ninth proposition, which complains of Special Issue 15a. That issue reads: "Do you find from a preponderance of the evidence that the total incapacity sustained by plaintiff, if you have found he sustained such total incapacity, was temporary only?" The objections to the issue were, substantially, that the issue as framed was misleading to the jury and because the word "temporary" was not defined. A previous issue in the charge inquired if appellee's disability was total, and it is obvious that disability could be total at a given time but that the total disability could be only temporary. It was necessary in this case to have that question determined by a jury finding. The inquiry of the extent of the disability was limited by the word "only" to distinguish it from a previous inquiry as to whether or not the disability was total and its duration. The question is not open to the objection that it was confusing to the jury. In compensation cases when disability is shown, it is of vital importance to ascertain whether or not the degree of disability is permanent or temporary; these are words of common meaning and so far as we are able to find there is no case in which a definition of either has been required. It has been held that a failure to define "permanent", when used in connection with the charge, presented no error. Bankers Lloyds v. Pollard, Tex.Civ.App., 40 S.W.2d 859, writ refused; Traders & General Ins. Co. v. Boyd, Tex.Civ.App., 121 S.W.2d 463, writ dismissed; Lloyds Casualty Co. of New York v. Grilliett, Tex.Civ. App., 64 S.W.2d 1005, writ refused. In the last cited case the rule there announced is distinguished from the holding in Employers' Casualty Co. v. Scheffler, Tex.Civ. App., 20 S.W.2d 833, in which case an improper definition was given when taken in connection with the nature of inquiry made.

Reverting to appellant's fourth proposition, mentioned in the early part of this opinion, we find that complaint is made because a lump sum judgment was entered for $5,010.60, it being the discounted value of 401 weeks compensation at the rate found, commencing with August 15, 1939, the date on which the jury found to be the beginning of appellee's disability. The calculation was erroneous; upon a finding of total permanent disability, as was done here, the compensable period starts with the date of the injury and not with the date of disability. Texas Employers Ins. Ass'n v. Guidry, 128 Tex. 433, 99 S.W.2d 900. Appellee has confessed this error and entered a remittitur of $483.41 as against the total judgment rendered. The total judgment is given credit in the application, by the document filed in this court, covering compensation for 23 weeks intervening between March 8, 1939, and August 15, 1939, properly discounted as provided in cases of lump sum settlements. The remittitur by appellee in this court removes the necessity of reversing the judgment of the trial court

upon the proposition presented, but enables us to reform the judgment and enter one that should have been entered by the trial court. Articles 1861 and 1862, R.C.S.

All propositions and their relating assignments of error are therefore overruled and the remittitur of $483.41 is entered and allowed and judgment is here rendered for appellee against appellant for the sum of $4527.19 with interest thereon at six per cent. per annum from March 29, 1940, the date of the judgment below.

As reformed, the judgment of the trial court is affirmed. The costs of this appeal are taxed against the appellee.