## AARON WOLF v. EMMA H. MAHAN.

(Case No. 4361.)

1. MOTION FOR NEW TRIAL — CUMULATIVE EVIDENCE. — In an action of trespass to try title, filed February, 1879, the plaintiff filed an affidavit June 21, 1880, of the forgery of a deed purporting to be her husband's, of date September 3, 1844, acknowledged before A. P. Thompson, chief justice of Harris county, and which deed formed part of the defendant's chain of title. Upon the filing of the affidavit, the defendant propounded interrogatories to certain witnesses in Harris county, Texas, to prove the execution of the deed. The defendant, in her cross-interrogatories to those witnesses, indicated an effort to prove that her husband, prior to September, 1844, had removed to a distant state. Four of the witnesses, by depositions, proved the genuineness of the deed, with other facts corroborating it. On the trial, defend-

ant introduced witnesses on the stand who testified that during September, 1844, P. Jenks Mahan, the pretended grantor, was in the city of Philadelphia and was in New Jersey. The jury found for plaintiff. The defendant urged a motion for new trial on account of newly-discovered testimony, which was in rebuttal of the plaintiff's testimony as to Mahan's whereabouts at the date of said deed. *Held*,

(1) That defendant was not chargeable with knowledge of such newly-discovered testimony, and consequent want of diligence to obtain it, by the said cross-interrogatories, seemingly designed to show Mahan's permanent removal from the state.

(2) That such rebutting evidence was not cumulative to testimony introduced directly proving the execution of the deed.

(3) That the motion for new trial was improperly refused.

2. CUMULATIVE EVIDENCE.— Evidence is not cumulative merely because former evidence may have indirectly tended to establish the same fact.

3. SAME — PRACTICE IN NEW TRIAL.— The reason of the rule forbidding a new trial for the purpose of admitting cumulative testimony does not apply where the party has had no fair opportunity to procure and adduce evidence on an issue raised by his adversary for the first time during the trial.

APPEAL from Williamson. Tried below before the Hon. W. A. Blackburn.

The opinion and syllabus sufficiently state the facts.

*T. P. Hughes* and *Makemson, Fisher & Price*, for appellant.— When new evidence, discovered by the use of reasonable diligence since the trial, is material, and would probably change the result of the former trial upon another trial of the case, a new trial should be granted. Railroad Co. *v.* Forsyth, 49 Tex., 178; Buford *v.* Bostick, 50 Tex., 372; Land *v.* Bass, id., 416; Mitchell *v.* Bass, 26 Tex., 376; Delmas *v.* Margo, 25 Tex., 1; Welsh *v.* Nasboe, 8 Tex., 189; Ables *v.* Donley, 8 Tex., 331; Sweeny *v.* Jarvis, 6 Tex., 35.

*Joe H. Stewart, Carleton & Morris* and *J. W. Posey*, for appellee.— A new trial will not be granted on account of newly-discovered evidence, when such evidence is merely cumulative. Appellant, in his motion for a new trial, introduced the affidavits of five persons who reside in Houston, Texas, and who also state that they resided in Houston in 1844, and who further say they knew P. J. Mahan, and that he was in Houston in 1844, and did not leave there until as late as 1845. This testimony, however, was but cumulative to that of Baker, Ennis, Boyce and Shephard of Harris county, Texas, whose answers were taken by appellant by interrogatories, and read on trial of this cause; and among the interrogatories propounded to be answered by each of them was this: "Int. 5. Where did said Mahan, Thompson and Cavenaugh live in the month of September,

1844?" To which Baker replied, "They all lived in Houston in the month of September, 1844." In answer to the same interrogatory, Ennis replied, "They were living then in Houston, in September, 1844." To the same question, Boyce answered, "I believe they lived in Houston in September, 1844." To the same question, Shephard replied, "Thompson and Cavenaugh lived here in Houston in 1844. I think Mahan; this I am not positive." The appellee also propounded to each of said four witnesses — Baker, Boyce, Ennis and Shephard — the following cross-interrogatory, and to which each replied: "Cross-int. 1. If, in answer to the preceding interrogatories, you have said that P. J. Mahan resided in Houston, Texas, in September, 1844, then state fully your means of knowing such facts. Is it not true that some time between the summer of 1843 and the summer of 1846, said Mahan left said city of Houston and remained absent from Houston for at least a period of ten years? If yea, then state whether he left Houston between the summer of 1843 and the summer of 1844. If yea, what are your means of knowing it. If nay, state how you know it." To which the replies of the said four named witnesses were, substantially, that Mahan did not leave Houston until after 1844. Latham v. Selkirk, 11 Tex., 321; Kilgore v. Jordan, 17 Tex., 346; Ables v. Donley, 8 Tex., 336; Watts v. Johnson et al., 4 Tex., 311.

GOULD, CHIEF JUSTICE.— The only question which it is proposed to consider is, Did the court err in overruling the application for a new trial? The other errors assigned by appellant are not regarded as showing any ground for reversal, or as presenting any questions requiring discussion.

The result of appellant's efforts immediately after the trial shows that the testimony which he then obtained as to the whereabouts of Mahan in the fall of 1844, might have been discovered and obtained before the trial. Clearly the appellant was inexcusable for failing to produce this testimony on the trial, if the issue as to where Mahan actually was in September, 1844, was one on which he was bound to be prepared on the trial. By the affidavit of Mrs. Mahan, impeaching the genuineness of the deed of September 3, 1844, from Mahan to Cavenaugh, appellant was notified of the necessity of proving its execution, and by the cross-interrogatory propounded to the witnesses whose depositions he took to prove the handwriting of Thompson, the witness to the instrument, and the officer before whom it was acknowledged, of Mahan, the maker, and that the body of the instrument was in the handwriting of Cavenaugh, the grantee, he

was notified that Mrs. Mahan was endeavoring to establish that Mahan had removed from Houston before September, 1844. As these witnesses testified fully that in 1844 Mahan continued to live in Houston, it is not perceived that the appellant was in any way notified that evidence would be offered to show, not that Mahan, in September, 1844, had removed from Houston, but that he during that month was in a distant state. There being nothing to notify appellant in advance that such an issue would be made, we think that he is excusable for having failed to anticipate it. Having proved up the instrument by four respectable witnesses who knew Mahan, Thompson and Cavenaugh for some years prior to 1844, who testify clearly and minutely as to the genuineness of the signatures of witness and grantee, and also that the body of the instrument is in the handwriting of the grantee, Cavenaugh, and who testify also as to the residence of all three in Houston during 1844, we think appellant was not chargeable with negligence if he failed to go further and prepare to meet evidence that in September, 1844, Mahan was in Philadelphia and Trenton, N. J. The instrument impeached purported to be over thirty-five years old, and he could hardly anticipate that an effort would be made to disprove its genuineness by showing that Mahan was somewhere else at a date so remote. Under all the circumstances of the case, appellant might well be surprised when testimony was offered, not that Mahan in September, 1844, had removed from Houston, but that at different times about that date he was in Trenton and Philadelphia, and therefore could not have been in Houston. True, such evidence tended to disprove the genuineness of the deed impeached, but it was evidence which, under the circumstances exhibited by the record, appellant could not have anticipated, and therefore, in the exercise of ordinary diligence, was not bound to be prepared to meet. The case in 5 Cow., 106–122, is one similar in principle. Graham & Waterman on New Trials, pp. 952, 962 and 1055. But it is said that appellant adduced evidence on the trial that Mahan throughout 1844 still resided in Houston, and that the evidence offered to show that throughout the fall of 1844 he was actually in Houston is merely cumulative. We do not so regard it. The main issue was the genuineness of the deed, and on the trial, by witnesses produced on the stand, the subordinate issue was made that at the date of the deed Mahan was many hundred miles away from Houston. Appellant on the trial adduced no direct evidence on this point. Indirectly his evidence as to residence had a bearing on this issue, but direct evidence that Mahan was in Houston throughout the fall of 1844 was not cumulative of this indirect evidence. Evi-

dence is not cumulative merely because former evidence may have indirectly tended to establish the same fact. If so, after any evidence tending to show the execution of the deed, evidence of the whereabouts of Mahan at its date would have been cumulative, because whatever tended to show the genuineness of the deed tended also to show that Mahan was in Houston at the date of its execution.

The reason of the rule forbidding a new trial for the purpose of admitting cumulative testimony does not apply where the party has had no fair opportunity to procure and adduce evidence on an issue raised by his adversary for the first time, during the trial, by the introduction of evidence which could not be anticipated. The reason of the rule is that public policy, looking to the finality of trials, requires that parties be held to diligence in preparing their cases, and that they shall not be allowed a second trial because they mistook the amount of testimony requisite. Powell v. Jones, 42 Barb., 30. But the policy which seeks to limit continued litigation does not apply where a party has had no fair opportunity to present his side of the case — no real day in court. In discussing this subject, Chief Justice Wheeler said: "It is desirable that there should be an end of litigation with as little delay and expense as possible, consistently with the great end of litigation — a correct decision of causes according to their real merits; but it should always be sought in subordination to the great end to be attained." Mitchell v. Bass, 26 Tex., 377. In the same opinion he also said: "Where there can be any doubt of the justice of the verdict to refuse a new trial, when the party has really discovered new evidence of a conclusive tendency, would be against justice and precedent."

In the conflict of evidence, the justice of the verdict in this case is at least doubtful; and as the additional evidence sought to be adduced is evidence which the appellant is excusable for not having produced on the former trial, and is evidence bearing directly on a material issue, and which might probably lead to a different verdict, we think that the new trial should have been granted. R'y Co. v. Forsyth, 49 Tex., 178.

Because the court erred in refusing a new trial, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 5, 1882.]