LANCASTER et al. v. SETTLE.    (No. 8869.)

(Court of Civil Appeals of Texas. Ft. Worth. April 27, 1918.)

1. NEW TRIAL ⬤108(4)—GROUNDS—NEWLY DISCOVERED EVIDENCE.

After verdict against a railroad company for personal injuries to a pedestrian, struck by a loose door when the train passed him, newly discovered evidence that the pedestrian was attempting to board the train when injured required a new trial.

2. NEW TRIAL ⬤105—GROUNDS—NEWLY DISCOVERED EVIDENCE.

After verdict against a railroad company for personal injuries to a pedestrian, struck by a swinging door as the train passed him, newly discovered evidence that plaintiff's witness stated, in plaintiff's hearing, without denial, that plaintiff was trying to jump the train and fell, was more than impeaching testimony, and required a new trial.

3. RAILROADS ⬤397(2) — INJURY TO PEDESTRIANS—EVIDENCE—ADMISSIBILITY.

In suit for personal injuries to pedestrian, struck by swinging door on passing train, testimony for plaintiff that witness had seen loose and swinging car doors at other times and on other cars was admissible, to show that it was not unusual or improbable for a car door to be loose and swinging.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Action by Raymond Settle, by next friend, J. J. Cummins, against J. L. Lancaster and another, receivers of the Texas & Pacific Railway Company. From judgment for plaintiff, defendants appeal. Reversed and remanded.

H. C. Shropshire, of Weatherford, for appellants. Hood & Shadle, of Weatherford, for appellee.

CONNER, C. J. This appeal is from a judgment on the verdict of a jury in favor of Raymond Settle for the sum of $4,210.15 as damages for personal injuries. The suit was predicated upon allegations to the effect that, while Raymond Settle was walking along a well-used path on the south side of the track of the Texas & Pacific Railway Company, he was struck on the back and

shoulders by a projecting timber or other hard substance extending from a passing freight train of the Texas & Pacific Railway Company, at the time being operated and controlled by the defendant receivers, their agents or servants. It was alleged that Raymond Settle was knocked down by such projecting timber or substance, and thrown under the cars, which ran over and crushed one of his arms, so as to necessitate its amputation below the shoulder. It was alleged that Raymond Settle was walking at safe and reasonable distance from said track and passing train, and that he would have received no injury, but for the negligence of the agents and servants of defendants operating the train with the dangerous projection extending therefrom.

There was evidence in behalf of appellee, supporting the theory presented by his pleadings, to the effect that Raymond Settle, while walking along the path mentioned, was knocked down by a loose and swinging door on one of the passing cars, and the judgment is sought to be supported on the theory that the appellants were guilty of negligence in permitting the train to be operated at the place of the accident with such a defective door. There was evidence in behalf of appellants tending to show that the car was a foreign car; that the train was made up of foreign cars at Ft. Worth and there inspected; that at the time of its departure from Ft. Worth no defective or loose car doors were discovered; that the train proceeded to Aledo, near where the accident occurred, where the train was again inspected, and where, as some of the operators of the train testified, no defective and swinging doors were observed. There was testimony in behalf of appellee, however, to the effect that there was a loose car door seen on one of the cars at Aledo, and one or more of appellee's witnesses testified that as the train proceeded west from Aledo, at points before or beyond where Raymond Settle was injured, what appeared to be a loose or swinging car door was observed. The evidence on the trial was to the effect that the path along which Raymond Settle testified that he was walking was well defined and had long been in use by persons traveling along the railroad. Raymond Settle testified to the effect that, while he was walking in a westwardly direction a short distance west of Aledo, he observed the approach of the train that injured him, and that he first stepped down and away from the railroad track into the pit or bar pit of the slight fill there existing, and that after the engine and one or two of the cars had passed him he again approached and resumed his walking along the pathway beside the track, very shortly after which he was struck by something projecting from the train, and knocked down and under the train, which so lacerated one of his arms as to thereafter require its amputation. One W. R. McCurley testified in behalf of appellee, among other things:

"I asked him [Raymond Settle] what hurt him. He said the train hit him; knocked him down. He said nothing else in regard to the way it occurred, more than he just contended all the time the same thing; he didn't know what it was, whether the engine, or a box, or not; something hit him and knocked him down. He denied getting on the train at the time. He said he was not trying to get on the train."

H. E. Law testified in behalf of appellants, among other things, that he was engaged in the business of general merchandising at Aledo; that he lived on the south side of the track and witnessed the accident. He testified:

"I seen this boy coming on down the railroad, and, when this train come on, he crossed over from the north side to the south side of the railroad; and the train came on, and when the engine passed him I seen him looking back, and he made one run along with the train, and he never taken hold of it, and he kind of stopped and looked back, and there was another car coming on, and he put his bundle under his left arm and reached up with his right arm, and just looked to me like, by the time he taken hold of it, it just threw him right back around between the cars; he caught the back end of a car, and threw him right around under there, and I thought he was crushed all to pieces."

There was also testimony developed in behalf of appellee that possibly Law was in a position that prevented him from seeing the accident as he testified, and the jury, after having received the charge of the court, returned a verdict in favor of appellee.

In the foregoing statement we have only stated such parts of the record and evidence as we think necessary to illustrate our ruling upon appellants' first assignment of error, under which it is insisted that the court below erred in overruling appellants' motion for new trial on the ground of newly discovered evidence. In support of this ground of the motion appellants presented the following affidavits:

One by C. G. Emmons, to the effect that his home is in the same block as the home of Eugene Law (the Law who testified in behalf of appellee as heretofore stated); that on the occasion in question he looked up "and saw the young man or boy who was hurt standing right close to the railroad track; he was standing very close to the south rail of the track, and the engine or probably two or three cars had passed him; that immediately on seeing the situation the thought passed through affiant's mind that the party was going to try to catch the train, and he watched to see what became of him, and he saw him make a move as though he was going to catch the train, or caught at it; he extended his arms as if he were trying to grab the train, and when he caught at the train it threw him loose; it was going too fast, as affiant thought; it did not throw him down at this time, and he made the second grab at the train, and looked as if he fell between the cars." This affiant further

stated in his affidavit that the first time he mentioned what he knew was after the case was tried and judgment rendered for the boy. The affidavits of Jim L. McCall, C. H. Underwood, W. R. McCurley, and J. E. McMurray were all presented, all of which were to the effect that there was no obstruction between the point where H. E. Law testified that he was at the time he witnessed the accident and the train where the boy was hurt. The affidavit of John Emmons was presented, and after stating his situation at the time, and after stating that he went to where "the boy and McCurley were," it was further stated "that, as soon as affiant walked up to where the boy and McCurley were, he asked McCurley how it happened, and McCurley replied, 'He was trying to jump the train and fell;' that McCurley made this statement in the presence and hearing of Raymond Settle, and Raymond Settle never denied nor affirmed the truthfulness of the statement." There were other affidavits fully showing diligence on the part of appellants, and accounting for the reasons why the testimony in the foregoing affidavits was not earlier discovered. These affidavits, however, will not be set out, inasmuch as there seems to be no contest on these points.

It is insisted in behalf of appellee that the newly discovered evidence developed by the foregoing affidavits is but cumulative in character, and only goes in one instance to the impeachment of the witness W. R. McCurley. It is true that the testimony of C. G. Emmons, as disclosed by his affidavit is cumulative or corroborative of that of H. E. Law, who testified in behalf of appellants upon the trial, and hence contradictory of the testimony of W. R. McCurley, who testified in favor of appellee; but, while the general rule is otherwise, it cannot be said that in no case will the court grant a new trial for newly discovered evidence that is cumulative or of an impeaching nature. See El Paso Southwestern R. Co. v. Barrett, 46 Tex. Civ. App. 14, 101 S. W. 1025, 121 S. W. 570; Missouri, K. & T. Ry. Co. of Texas v. McGregor, 68 S. W. 712; Ry. v. Forsyth, 49 Tex. 171; Wolf v. Mehan, 57 Tex. 171, 29 Cyc. 911–917. In a note to 29 Cyc. p. 917, we find the following statement of the rule:

"When the newly discovered evidence is additional to some already in the case in support of the same proposition, the probability that such new evidence would change the result is generally very much lessened, so that much more evidence, or evidence of much more value, will generally be required when such evidence is cumulative; but if the newly discovered testimony, although merely cumulative, is of such a character as to make it seem probable to the court that, notwithstanding the same question has already been passed upon by the jury, a different result would be reached upon another trial with the new evidence, then such new trial should be granted."

[1] Viewed in the light of such a rule, we think the evidence disclosed by the affidavit of C. G. Emmons highly important. It distinctly supports the evidence of Law and the theory of appellants' defense in this case, and when supported by the additional affidavits to the effect that no obstruction existed to Law's view at the time of the accident (testimony in behalf of appellee tending to show otherwise), and the evidence of the attending physician that he found no bruises or abrasions on Raymond Settle's back, raises a strong probability that a different result would be reached upon another trial.

[2] Moreover, the affidavit of John Emmons to the effect that, while the witness McCurley was at place of injury, he stated that Raymond Settle "was trying to jump the train and fell," and that this statement was made in the hearing of Raymond Settle, and that Raymond Settle did not deny the statement, is of a character that goes beyond that of impeaching testimony. If in fact such declaration was made by McCurley in the presence of Raymond Settle, and Raymond Settle failed to deny it, such failure would constitute original evidence, proper for the consideration of a jury in weighing the testimony of Raymond Settle. On the whole, we conclude that the new trial should have been granted, and appellants' assignment raising this question is sustained.

By appellant's second assignment the sufficiency of the evidence to establish negligence on appellant's part, which proximately caused the injury, is raised; but, in view of the fact that upon another trial both pleadings and evidence may be different, we have concluded to pass this assignment undetermined, and we announce no conclusion upon that issue.

[3] The seventh to the thirteenth assignments, inclusive, relate to evidence of witnesses to the effect that at other times and upon other cars they had seen loose and swinging car doors. Objection was made to this testimony upon the ground that negligence in the present case could not be established by showing negligence upon other occasions. The testimony referred to, however, we think was properly admitted as the evident purpose thereof was merely to show that it was not unusual or improbable, as some of appellants' testimony possibly tended to show, for car doors to be loose and swinging, and that it was possible for such swinging doors to project outward far enough to strike a person walking along a pathway close to a track. Appellants presented no request to have the testimony so limited, and, as presented, the assignments referred to will be overruled.

In the sixth assignment of error the seventh paragraph of the court's charge is complained of, on the ground that the jury were thereby authorized to award plaintiff compensation for loss of time up to the date of trial without sufficient pleading. We think we need not discuss this assignment, inasmuch as this criticism of the charge, for which

there is possibly some ground, may easily be avoided upon another trial.

We conclude that there is nothing else that need be discussed, but that for the error of the court in overruling appellants' motion for new trial the judgment of the court should be reversed, and the cause remanded.

Reversed and remanded.