VICK v. SCHAFF. (No. 15.)*

(Court of Civil Appeals of Texas. Waco. March 13, 1924. Rehearing Denied April 17, 1924.)

1. Carriers ⚖➾320(24)—Whether there was banana peeling on vestibule platform held one for jury.

In a passenger's action for personal injury, alleged to have been caused from a fall when he stepped on a banana peeling on the vestibule platform of the coach, where there was evidence tending circumstantially to rebut plaintiff's witness' direct testimony concerning the presence of the peeling on the platform, such question was one for jury.

2. Carriers ⚖➾347(10)—Negligence in going onto vestibule while train in motion held for jury.

Whether passenger intending to alight at a station was negligent in going onto the vesti-

bule while the train was in motion held under the evidence for the jury.

3. Negligence ⚖➾136(14)—Question for jury.

Negligence, whether actionable or contributory, is ordinarily a question of fact for the jury.

4. Evidence ⚖➾211—Evidence of admissions by party as to testimony in a former action as to injuries held not too remote on issue of contributory negligence.

Where a prior accident to plaintiff occurred in 1914, and trial was had in 1918, in an action for another injury occurring in 1921, evidence of his admissions in the prior case as to the serious nature and continuance of his injuries was not too remote to be considered by jury on issue of contributory negligence in going on the platform of a moving car to make a hurried exit when the train stopped, and on issue whether any part of his present suffering was attributable to prior injury.

5. New trial ⚖➾102(5)—No lack of diligence in failing to make inquiry of adverse party's claim agents.

Where newly discovered evidence of the existence of a banana peeling on the vestibule platform, alleged to have been the cause of plaintiff's fall and injury, was that of claim agents of defendant, it was not necessary to a claim of diligence by plaintiff that he should show that he had applied to the claim agent preparing the defense to ascertain whether he or his associate knew of any facts material to the case which they did not intend to disclose at the trial.

6. New trial ⚖➾104(3)—Newly discovered evidence held not cumulative but competent on issue.

In a passenger's action for personal injuries, alleged to have been caused by slipping on a banana peeling on the vestibule of the coach, where plaintiff's witness stated he examined the platform immediately after plaintiff's fall, and found a banana peeling thereon, newly discovered evidence that defendant's claim agent after the accident found a banana peeling on the step, was not cumulative but competent.

7. New trial ⚖➾108(4)—Newly discovered evidence held such as might probably produce different result.

In passenger's action for injuries alleged to have been caused from slipping on a banana peeling on vestibule platform, where jury, notwithstanding positive evidence thereof, found there was no banana peeling on the platform, newly discovered evidence of defendant's claim agents that they found a banana peeling on the step was such as might probably produce a different result on another trial.

8. Appeal and error ⚖➾551—Newly discovered evidence considered when presented by bill of exceptions only.

Newly discovered evidence urged as a ground for new trial presented by bill of exceptions only should be considered.

9. New trial ⚖➾99—Refusing new trial for newly discovered evidence held error.

Where lack of diligence was not shown in procuring witnesses whose newly discovered

evidence was relied on for new trial, and such evidence was not cumulative, nor incompetent, but might produce a different result, refusal of new trial was error.

Error from District Court, McLennan County; James P. Alexander, Judge.

Action by V. J. Vick against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

Williams & Williams and J. D. Williamson, all of Waco, for plaintiff in error.

Spell, Naman & Penland, of Waco, for defendant in error.

GALLAGHER, C. J. V. J. Vick, plaintiff in error herein, instituted this suit against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas, defendant in error herein, in the district court of McLennan county, to recover damages for personal injuries alleged to have been suffered by him on October 1, 1921, as the result of negligence of the agents and servants of the defendant in error in operating a passenger train from Temple into Waco. The parties will be designated as in the trial court. The case was submitted to a jury on special issues, and upon the answers returned by the jury thereto judgment was rendered for defendant. Plaintiff has brought the case to this court for review by writ of error.

The substance of plaintiff's allegations so far as necessary to recite is that he was a passenger on one of defendant's passenger trains from Temple to Waco; that when the train approached the depot at Waco that station was called by the porter; that he arose from his seat and went out onto the platform of the rear vestibule of the coach in which he was riding, for the purpose of leaving said train; that when he got out into such vestibule he discovered that the trapdoor covering the steps on the side of the coach next to the depot had not been raised, and that the vestibule door on that side had not been opened; that he then turned to re-enter said coach for the purpose of going to the other end thereof, and in turning stepped on some slick substance which he alleged to have been a banana peeling; that his foot slipped out from under him, and he fell down the steps and out an open door of such vestibule on the opposite side of the coach from the depot; that in such fall his right leg was caught under the wheels and crushed and mangled so that it had to be amputated between the ankle and the knee; that his right hip bone was mashed and dislocated, and that his back where the hip bone joins the spine was bruised, injured, and dislocated; that defendant was negligent in permitting the trapdoor over the steps and the door on that side of the vestibule to be open and in permitting the banana peelings to be and remain on the platform of said vestibule; that such negligence was the proximate cause of his injuries.

Defendant denied the acts of negligence charged, and alleged that plaintiff went onto the platform of said rear vestibule of the coach in which he was riding, raised the trapdoor over the steps, and opened the vestibule door on that side of the coach for the purpose of alighting therefrom and claiming to have been thrown therefrom and feigning injury; that he lost his balance and fell so as to receive the injury to his leg complained of by him; that he was under indictment for a felony in San Patricio county, and that his trial on said indictment had been set on the 29th of September, two days preceding; that plaintiff knew his bond had been forfeited and an alias capias issued for his arrest; that he intended to attempt to escape such arrest by claiming to have fallen from the train and to have been injured in such fall; that plaintiff further intended to feign serious injury as a result of such fall for the purpose of claiming and attempting to collect large benefits on policies of accident insurance carried by him; that theretofore, about February, 1914, plaintiff was severely and permanently injured in an accident on another railroad, and that all the injuries complained of by him in this case, except the loss of his leg, resulted from said prior accident; that the normal use of plaintiff's legs and spine was so impaired by such prior accident that he could not maintain his equilibrium on said vestibule platform while the train was in motion; and that he was guilty of contributory negligence in going onto the same under all of the circumstances.

Plaintiff testified with reference to the accident as follows:

"I will just describe that accident, and what happened at the time I started to get off the train, and how come me to get out, and all about it, to the jury: I was sitting about the middle of the coach, on the right-hand side, coming north, this way (indicating)—I believe it was north, coming into town from Temple, and the porter came through and hollered, 'Waco,' so I got up, got my hat and coat on, and went back to the back end where the man was that was with me. I thought probably he might be asleep because he was sitting on the back seat on the left-hand side, so I went back there, and he wasn't asleep, and I got a drink, and asked him for a cigarette, and then I said, 'I expect it is about time we were getting off of here.' The train had begun to sort of rock like it was slowing down, and he had already announced the station, so I opened the door and started off, but when I got there I saw that there was no door open, and nobody out there, so I looked back the other way, and said, 'We have got to get out the other end,' so as I started to turn around I stepped on something and went down the step, and my

*right foot was—in going down, I got to the bottom, and I grabbed the bottom of the step, and this right foot hits the ground, and when that hit the ground it turned me a summerset, like that (illustrating with hands), and my head hit the side of the wall of the coach, or something, and I didn't know anything from thereon any more than you do. It knocked me unconscious, and I didn't know anything about it until I come to going to the hospital in the ambulance.*

"I suppose that the vestibule door on that side of the train was open, or I couldn't have fell out. I could not have fallen out if it hadn't been open. The platform that covers the steps was open, but I did not know it was open when I fell through. I did not know that there was any peelings or anything on the floor out there. I didn't see any light on that end of the coach.

"There was a man by the name of Rawlins with me at that time. I did not voluntarily go back there and fall backwards off of that train, and stick my leg under the car and have it cut off, and I wouldn't have done that for the whole railroad system."

Russell Rawlins, a witness for plaintiff, testified that he sat at the rear end of the coach in the last seat; that plaintiff sat further forward. He further testified as follows:

"I saw two colored fellows on the back platform of the coach that I was riding in. I do not know how far they were from me, but it must have been about 10 or 12 feet though, I suppose. The back door of my coach was standing partly open. There was one of those negroes that was a porter, and the other was a plain clothes 'nigger,' and one of them pulled out a flat bottle out of his pocket, and taken a drink, and then passed it to the other nigger, and they pitched the bottle, or threw it down; I don't know what they did with it, but I saw them give it a pitch, and then I saw them empty two soda water bottles, and then they peeled some bananas—I don't know how many—and ate those. They were right there in front of me.

"The porter, when we got close to Waco, came in just before Mr. Vick was hurt, and hollered, 'All out for Waco.' He was at the end where Mr. Vick fell when he first hollered that. He had two soda water bottles in his hands when he came down the aisle.

"About that time, or shortly after the porter hollered, I saw Mr. Vick. He came down just before he hollered and borrowed a drinking cup I had, and got a drink, and then asked me for a cigarette, and I gave him a cigarette, but we didn't light them. I don't know how close Mr. Vick was to me when the negro passed us, that is, the porter, but he was in that end of the coach I didn't pay no attention, but he was right there close. Then Mr. Vick says, 'We will have to get off; we had better get off,' and he opened the door and stepped out, and I had the door still in my hand, and he stepped out on the vestibule, and he says, 'We are at the wrong end of the coach; we had better go back,' and as I turned and started to go back, and as Mr. Vick turned he slipped and fell. I can't say positive whether Mr. Vick fell down the step forwards or backwards, but I believe

he fell forward. I caught a glimpse of him as he fell, just as he went over the step, the bottom of the steps.

"I noticed the platform in the vestibule, and whether it was up, and whether the door was not open prior to that. That was the first time that I noticed it. I noticed that the door was open and the platform was up, but I did not notice that until after Mr. Vick had fallen.

"As soon as Mr. Vick had fallen, I turned and reported it to a porter that was standing there on the end of the next coach, and told him he had better report it, and he said 'Report it yourself; it is none of my damned business.' That was a colored fellow. He had on a white blouse and no cap. He was there in the vestibule, on the opposite side from where Vick had fallen, on the other coach, adjoining the one he had fallen from.

"I found some banana peelings laying there just at the top of the steps in the vestibule. The condition that those banana peelings was in was that they looked like they had been stepped on, and they were kind of smeared. I did not call anybody else's attention to that."

A. W. Harris, conductor on said train, testified for defendant that it was his duty to see that the traps and vestibule doors were closed, and that he noticed whether they were or not every time he passed from one coach to another; that on leaving Temple he caught the front coach and walked back to the first sleeper, which was immediately behind the coach in which plaintiff was riding; that he washed his face and hands in said sleeper, and then came forward to the coach in which plaintiff was riding and sat there until he reached Hewitt; that he then went into the next coach forward and remained there until the train reached Waco, at which place his run ended and he left the train; that the traps and doors of said vestibule next to said sleeper were closed tight as he came back and took his seat in said coach. W. H. Meeks testified he was auditor on said train and passed to and fro through said vestibule several times between Temple and Waco, and that, while he was not looking for a raised trap or open door, he could have noticed the trap and door in question if they had been in such condition when he passed. John Wright, train porter, testified that he was not out in the rear vestibule of said coach during the entire trip from San Antonio to Waco; that after the train left Lorena that morning he went to the rear of said coach and looked out through the glass in the door to see whether the vestibule platform had any trash on it, as it was his duty to turn it over clean at Waco, where he left the train. The pullman porter testified that shortly before reaching Waco he went to the front vestibule of his sleeper, which was adjoining the vestibule of the rear coach from which plaintiff fell; that he saw two men there; that the trap was up and the door open; and that one of the men was standing with one foot on the platform and

(260 S.W.)

one foot on the step; that he turned away a few minutes and when he again turned to said vestibule he saw only one man there, who remarked to him that a man had fallen off the train. All the train crew denied having seen any negro in civilian clothes in that part of the train, and. testified they would have seen him if he had been there.

Plaintiff admitted in his testimony that' he had been severely injured in said former accident which occurred in 1914; that he believed at the time that such injuries were permanent, and that he so testified at the trial of his suit for damages, which occurred in 1918; that such injuries seriously affected the use of his left leg. He further testified that about six months after such trial he began to take treatment from an osteopath, and shortly thereafter began to improve, and that he had fully recovered long before the accident in question.

The findings of the jury so far as pertinent to the propositions of law hereinafter discussed are as follows: (a) That the train porter did not know that said vestibule door was open; (b) but that it had been open for such length of time that defendant's employees should have known the fact; (c) that said employees were negligent in allowing said door to remain open; and (d) that such negligence was the proximate cause of plaintiff's injuries; (e)' that plaintiff was under all the circumstances guilty of contributory negligence in going out onto said vestibule platform while the train was in motion; and (f) that such negligence proximately contributed to or caused his injuries; (g) that plaintiff did not go out on said platform and' attempt to alight therefrom for the purpose of feigning injury; and (h) that he did not attempt to alight therefrom on that occasion.

The jury also found that there was no banana peeling on said vestibule platform, and therefore made no.findings on the other issues submitted with reference to whether the porter ought to have known such banana peeling·was there, whether he was negligent in allowing it to remain there, and whether such negligence was the proximate cause of plaintiff's injuries.

[1] Plaintiff contends that the presence of the banana peeling on the vestibule platform was established by uncontradicted evidence, and that the court erred in submitting such issue to the jury. The testimony of Rawlins is direct and positive that he saw the banana peeling on said vestibule platform immediately after plaintiff fell, and, so far as this record discloses, he was a disinterested witness. It is also true that no other witness testified directly on this point. The porter testified he looked out the opening in the door for the purpose of seeing whether there was any trash on, the platform, but he does not say in express terms whether there was anything on the platform at that time or not. The defendant, however, subjected Rawlins to a severe cross-examination, which developed some amount of intimacy and friendship between him and plaintiff, and several inconsistencies and contradictions. The defendant also introduced much evidence tending circumstantially to rebut Rawlins' testimony concerning the presence of said banana peeling on said platform. We think upon the whole record the court correctly held such presence a question of fact for the jury.

[2, 3] Plaintiff contends that his act as a passenger in going 'onto the vestibule platform while the train was in motion in order to be ready to alight therefrom as soon as it stopped at the depot did not constitute negligence, and that the court erred in submitting such issue to the jury and in rendering judgment against him on the findings of the jury thereon. Whether a person exercising ordinary care for his own safety would or would not have gone onto said vestibule platform while said train was in motion necessarily depends· on the circumstances surrounding such act at the time. There is no contention that plaintiff had any reason to anticipate that he would not be allowed ample time in which to leave the train without hurrying when it stopped at the depot. Defendant claimed that plaintiff had entered the train at the forward end of the coach, and that all the passengers preparing to leave the train at Waco had started in that direction; and that, if he had remembered where he entered the coach and had joined the other passengers in going to the same place to leave the coach, he would not have been' upon the back platform at all. Defendant also introduced the evidence above referred to concerning the injuries plaintiff had received in the prior accident, the effect they would probably have on his ability to preserve his equilibrium in walking or standing, and the probable permanency of such injuries. It is true plaintiff testified that he had fully recovered; but such recovery, while not directly attacked, was supported only by his own testimony. Negligence; whether actionable or contributory, is ordinarily a question of fact for the jury. We see nothing in the facts of this case to take it out of the general rule. The great weight of authority supports the proposition' that whether the act of a passenger in going onto the platform of a moving train constitutes contributory negligence is a question for the jury under the facts of each particular case. Lancaster v. Browder (Tex. Com. App.) 256 S. W. 905; G. H. & S. A. Ry. Co. v. Patillo, 45 Tex. Civ. App. 572, 101 S. W. 492, 498 (writ refused); Houston & T. C. Ry. Co. v. Johnson (Tex. Civ. App.) 103 S. W. 239, 241; Texas Mexican Ry. Co. v. Wilson (Tex. Civ. App.) 136 S. W. 565, 566; Bronson v. Oakes, 76 Fed. 734, 22 C. C. A. 520; Birmingham Ry., Light·& Power

Co. v. Barrett, 179 Ala. 274, 60 South. 262, 263, 265 (par. .6); Louisville & N. R. Co. v. Spears, 192 Ky. 64, 232 S. W. 60, 62 (pars. 6, 7); Louisville Ry. Co. v. Osborne, 157 Ky. 341, 163 S. W. 189, 191. In the case of Railway v. Oliver, 92 Ark. 432, 123 S. W. 662, cited by plaintiff, in which the court says in general terms that it is not negligence on the part of a passenger to go onto the platform of a moving train, there had already been a finding by the jury against contributory negligence on that account under the facts of that particular case.

[4] Plaintiff contends that the court erred in admitting in evidence, over his objection, his admissions that he testified on the trial of his damage suit for injuries sustained in said prior accident, in substance, that he had sought every kind of treatment, and had been benefited by none whatever; that as far as he knew he had omitted nothing in the world to relieve himself; that he had done everything he knew to do or had been told to do; that if he dropped his leg without support his foot just hung there like a rag; that to prevent that he had to wear a support that went around his waist under his clothing and down under his foot and thus supported the leg; that if said strap was off the leg it would just swing down and hit the floor; that aches and pains tingled up and down where the hip bone and backbone join, and from there up to about the middle vertebra, and that such condition had existed ever since about two months after said accident and had not stopped at the time of the trial. The gist of plaintiff's objections to this testimony was that it was too remote and was insufficient on that account to show that he had not fully recovered long before the time of the accident under consideration, as he claimed. We have already shown that the prior accident occurred in 1914, and that the trial at which this testimony was given occurred in 1918. The accident under consideration occurred in 1921: Considering the serious nature of plaintiff's injuries as so testified to by him after the lapse of four years from the time they were inflicted, we think that his condition at that time was not too remote to be considered by the jury on the issue of contributory negligence in determining whether he exercised ordinary care for his own safety in going out and standing upon the platform of a moving car merely in order to make a hurried exit therefrom when the train should actually stop, and on the further issue of whether any part of the suffering complained of on this trial was attributable to such prior injury.

Plaintiff complains of the admission in evidence over his objection, of the indictment pending against him in San Patricio county, of the entries on the docket of the judge of said court and on the minutes thereof concerning the number of times such case had been set for trial, the number of times he had secured a resetting or continuance of the same, and the number of times his appearance bond had been forfeited, and the date of the last forfeiture. He also complains of the admission in evidence, over his objection, of a confidential letter written by him to his attorney, concerning the feasibility of an attempt to postpone or continue the setting of said case on September 29th, two days before said accident. A large part of this testimony was finally excluded by the court, and the remainder was materially limited. In each instance, where the court refused to entirely exclude such testimony, he predicated his refusal in part on the fact that the plaintiff had voluntarily gone into the subject to some extent in his direct examination as a witness in his own behalf. The plaintiff during the progress of the trial moved to exclude all said evidence, which motion was at the time overruled. In view of this state of the record, we conclude that the issues so presented will not likely arise in the same form, if at all, on another trial, and discussion of same is here omitted.

[5] Plaintiff in his motion for new trial urged as one of the grounds for granting the same the existence of newly discovered evidence material to his case. The newly discovered witnesses were both claim agents of the defendant, and the record discloses that one of them was active in investigating the facts for the defense. These witnesses appeared and testified in open court on the hearing of said motion. Their testimony shows that the witness Mr. Jones arrived at the depot at Waco on another train a few minutes after the arrival of the train on which plaintiff was a passenger. About 15 minutes after the accident he examined the platform and steps from which plaintiff fell. The trap had been lowered and the vestibule door closed. He lifted the trap and found a banana peeling on the steps. He picked it up and put it in his pocket, and a few hours later gave it to Mr. Hyde, the other newly discovered witness, who was then engaged in investigating the facts of the case. Mr. Hyde in his testimony on such hearing corroborated Mr. Jones with reference to receiving the banana peeling from him. He testified that same was not then in his possession nor in his office. Mr. Jones testified that he had not told the plaintiff nor any one else that he found said banana peeling on that train. Mr. Hyde testified that he did not disclose the facts to plaintiff nor to any of his counsel. Both these witnesses were in court more or less during the trial of the case, but neither was called to testify therein.

The rule in this state with reference to revising the action of a trial court in refusing a new trial on the ground of newly discovered evidence was clearly stated by our Supreme Court in Railway Co. v. Forsyth, 49 Tex. 171, 178, as follows:

"It must be admitted that greater deference should be given in an appellate tribunal to the action of the lower court on a motion of this kind than on an application for a continuance; both of which, no doubt, are, in a degree, necessarily addressed to the discretion of the court in which they are made. But while this is the case, it is well settled that the right to a new trial on this ground is not exclusively within the discretion of the court of the first instance; and it must now be regarded as a settled rule of practice in this court to revise the action of the district court overruling the motion, where the newly discovered evidence, when considered in connection with the facts developed on the trial, is clearly material to the issue, and might probably produce a different result on another trial; and where the evidence came to the knowledge of the applicant after the trial, without a want of due diligence on his part in not sooner discovering it, and where the newly-discovered evidence is not of a character for which the courts, by well-established practice, do not in general grant new trial."

What constitutes such diligence as to make subsequently discovered testimony available as ground for new trial necessarily depends largely upon the facts of each particular case. Plaintiff in his verified motion made a prima facie showing of diligence, and such showing was not met by any countervailing proof on the hearing. The testimony shows that plaintiff was rendered unconscious by his fall and injury, and that he did not recover consciousness until he was in the ambulance on the way to the hospital. Shortly after his arrival there his leg was amputated, and it appears that he was confined in the hospital for considerable time. The witness Jones was neither a passenger on the same train as plaintiff nor a member of the train crew thereon. There was nothing to indicate to the plaintiff that either of these witnesses knew the particular fact in question. In the absence of something to indicate a probability of such knowledge, we do not think it was necessary to a claim of diligence on the part of plaintiff that he should show that he had applied to the claim agent preparing the defense to ascertain whether either he or his associate knew any facts material to the case which they did not intend to disclose at the trial. Railway Co. v. Forsyth, supra, pages 178–179.

[6] We do not think said evidence, strictly considered, cumulative under the authorities. Our Supreme Court, in Railway Co. v. Forsyth, supra, page 180, stated the definition of cumulative evidence and the application of such rule as follows:

"Nor can it be maintained that the newly discovered evidence is cumulative, and therefore not such as to warrant the granting of a new trial. Cumulative evidence, as has been often said, is additional evidence of the same kind to the same point. Although evidence tends to prove the same proposition as that previously introduced, yet it is not cumulative when it is of a different character, and merely tends to prove the former proposition by proof of a new and distinct fact. 'The meaning of the rule,' says Judge Woodbury, in Aiken v. Bemis, 3 Wood. & Min. 358, 'cannot be to exclude, as cumulative, newly-discovered evidence of subordinate points or facts bearing on the general question; for, in such a view, no new trial for new evidence could ever be obtained, all new evidence relating, as it must if it be pertinent, to the general ground or general fact put in issue before. But it must mean that new evidence to a subordinate point or fact, is not competent where the subordinate point or particular fact was before gone into; because it is then cumulative or additional as to that fact.'"

Plaintiff's witness Rawlins testified that he examined the platform immediately after plaintiff fell, and found a mashed or smeared banana peeling thereon. He was the only witness who testified directly and positively whether such peeling was there at that time or not. The fact that the banana peeling was shorly afterwards found on the step was a circumstance tending to corroborate his testimony on this point. His evidence was direct and positive. The evidence under consideration was circumstantial and corroborative. Both, however while not of the same kind, were competent on the real issue before the jury.

[7] We also think the newly discovered evidence such as might probably produce a different result on another trial. The jury, notwithstanding positive evidence of the witness Rawlins, found that there was no banana peeling on said platform when plaintiff fell therefrom. They also found that plaintiff's mere presence on said platform was the proximate cause of his fall. Had this evidence been before them they might have found that such banana peeling was in fact there as claimed by plaintiff, that he stepped upon it, and that his foot slipped on the same, and that the slipping of his foot thereon was the proximate cause of his fall.

[8] Defendant objected to the consideration of the testimony given by said newly discovered witnesses on the hearing of motion for new trial because such testimony was presented by bill of exception only. We think the evidence so preserved and presented should be considered under the authority of Coalson v. Holmes, 111 Tex. 502, 240 S. W. 896.

[9] The court erred in refusing plaintiff's application for a new trial on the ground of newly discovered evidence. Railway Co. v. Forsyth, supra; Wolf v. Mahan, 57 Tex. 171, 173–175; Mitchell v. Bass, 26 Tex. 372, 376; Receiver v. Ellis, 86 Tex. 447, 448, 25 S. W. 618; Spencer v. State, 69 Tex. Cr. R. 92, 97, 153 S. W. 858, 46 L. R. A. (N. S.) 903; International Life Ins. Co. v. Lester (Tex. Civ. App.) 215 S. W. 351; Lancaster v. Settle (Tex. Civ. App.) 204 S. W. 772; American Indemnity Co. v. Hubbard (Tex. Civ. App.) 196 S. W. 1011, 1013; Cotulla

State Bank v. Herron (Tex. Civ. App.) 202 S. W. 797; Insurance Co. v. Askew, 11 Tex. Civ. App. 59, 32 S. W. 31; Railway Co. v. Barron, 78 Tex. 421, 426, 14 S. W. 698; Huggins v. Carey, 108 Tex. 358, 363, 194 S. W. 133; Douglas v. Walker, 42 Tex. Civ. App. 213, 92 S. W. 1026; Horne v. Stockton (Tex. Civ. App.) 178 S. W. 962, 964; Delano v. Delano (Tex. Civ. App.) 189 S. W. 972.

The judgment of the trial court is reversed, and the cause remanded for another trial.